[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 568.]

LITTON SYSTEMS, INC., APPELLANT, *v*. TRACY, TAX COMMR., APPELLEE.

[Cite as *Litton Sys., Inc. v. Tracy*, 2000-Ohio-427.]

*Taxation—Conveyors and material-handling equipment, installed in distribution centers of retailer of apparel and personal care products, are subject to sales tax.*

(No. 99-578—Submitted April 11, 2000—Decided May 31, 2000.)

APPEAL from the Board of Tax Appeals, No. 95-A-1001.

———————————

{¶ 1} The Limited, Inc., a retailer of apparel and personal care products, built two distribution centers on its campus in Reynoldsburg, Ohio—one for its Lane Bryant division and one for its Victoria's Secret division. The Limited contracted with Litton Systems, Inc. ("Litton"), appellant, to install conveyors and material-handling systems in each of the centers in coordination with other construction.

{¶ 2} Litton attached the conveyor and material-handling components to each center's building support beams that others had erected. Litton attached these components by bolting hangers and headers to the support beams and bolting the conveyor and material-handling components to the hangers and headers. The hangers and headers do not support the building; they support the equipment that Litton supplied, as well as lights and electrical distribution systems installed by other contractors. The Limited could unbolt the Litton-installed systems and totally remove them without damaging the building, although it has no plans to do so. The Limited may also repair and replace components of the systems and reconfigure them.

{¶ 3} The systems primarily transport merchandise between different handling functions. For example, the conveyor system will bring merchandise to a

particular station where employees may remove the merchandise from the system, handle the merchandise, and place the merchandise on another conveyor for transportation to another area. The systems contain gravity-fed and motor-powered conveyors.

{¶ 4} Litton collected sales tax from The Limited for the transactions in which Litton installed this equipment. At the urging of The Limited, Litton filed a claim for refund of erroneously paid sales tax with the Tax Commissioner, appellee, on behalf of The Limited. The Limited, as agent for Lane Bryant and Victoria's Secret, prosecuted the application. The application claimed that, *inter alia*, "[t]he installed conveyor system, as a structure or fixture, constitutes real property and the purchaser was not liable for the tax." The commissioner denied the claim, and The Limited, in prosecuting the claim, appealed the commissioner's order to the Board of Tax Appeals ("BTA").

{¶ 5} The BTA found that the disputed equipment had not lost its characteristics as personal property. The BTA determined that the conveyors and material-handling equipment were not structures or improvements under R.C. 5701.02. Accordingly, the BTA affirmed the commissioner's order.

{¶ 6} This cause is now before the court upon an appeal as of right.

_____

*Jones, Day, Reavis, & Pogue* and *John C. Duffy, Jr.*, for appellant.

*Betty D. Montgomery*, Attorney General, *Richard C. Farrin* and *Phyllis J. Shambaugh*, Assistant Attorneys General, for appellee.

_____

*Per Curiam.*

{¶ 7} In defining "sale" and "selling" in R.C. 5739.01(B)(5), the General Assembly provided:

"Except as provided in section 5739.03 of the Revised Code, a construction contract pursuant to which tangible personal property is or is to be incorporated into

2

a structure or improvement on and becoming a part of real property is not a sale of such tangible personal property. The construction contractor is the consumer of such tangible personal property * * *."

{¶ 8} In *Thomas Steel Strip Corp. v. Limbach* (1991), 61 Ohio St.3d 340, 341, 575 N.E.2d 114, 115, we interpreted this provision:

"The consumer pays the sales tax to the vendor. R.C. 5739.03. Under R.C. 5739.01(B)(5), the consumer in a construction contract is the construction contractor, because a construction contract is not a sale of tangible personal property to the owner of the real property. The contractor must pay the tax on his purchase of the materials."

{¶ 9} Here, Litton argues that it incorporated the conveyors and material-handling systems into The Limited's structures because Litton had physically affixed the equipment to The Limited's distribution centers. Litton continues to argue that, within the meaning of this statute, Litton did not sell the equipment to The Limited. The commissioner replies that The Limited could easily remove the disputed equipment without damaging the structures, and, accordingly, Litton had not incorporated the equipment into the structures.

{¶ 10} When Litton installed this equipment, between January 1991 and January 1992, the General Assembly defined "real property" and "land" in R.C. 5701.02(A)[1] as:

"[L]and itself * * * and, unless otherwise specified, all buildings, structures, improvements, and fixtures of whatever kind on the land, and all rights and privileges belonging or appertaining thereto."

{¶ 11} A decade ago, in *Green Circle Growers, Inc. v. Lorain Cty. Bd. of Revision* (1988), 35 Ohio St.3d 38, 517 N.E.2d 899, we reiterated our past holdings and noted that the definition of "real property" contained in R.C. 5701.02 deviates

---

1. The General Assembly has, effective July 20, 1992, amended R.C. 5701.02. We apply the version of the statute in effect during the claim period. See 144 Ohio Laws, Part IV, 5487.

from the traditional distinction between realty and personalty. According to the statutory definition, a structure or building located on land could be personal property but be treated as real property unless the General Assembly has otherwise specified. In *Green Circle Growers*, we affirmed the BTA's decision and held that greenhouse structures "attached to the realty by placement of metal sleeves into post holes anchored in concrete" are structures on real estate.

{¶ 12} Furthermore, in *Thomas Steel Strip Corp.*, we observed that, under this definition, any property firmly attached to land is real property for tax purposes, unless otherwise specified. We stated that we did not ask whether an improvement primarily benefited the land or the business on the land because the definition of "real estate" "does not require the fact-finder to make this distinction." *Thomas Steel Strip* at 341, 575 N.E.2d at 115. We also refused to adopt a restrictive definition of "structures * * * of whatever kind" because "[t]his phrase places no limit on the type of structure that is, for tax purposes, real property." *Id*. Finally, we concluded that the disputed items, rooms to house equipment and store material and floor plates to support people and transportation equipment, were structures.

{¶ 13} The next year, in *Kings Entertainment Co. v. Limbach* (1992), 63 Ohio St.3d 369, 588 N.E.2d 777, we again ruled that the BTA need not determine whether a structure or improvement on the land primarily benefited the real property rather than the business on the land. This question need not be asked because the definition did not require the question. In *Kings Entertainment*, we questioned applying fixture analysis, set forth in *Teaff v. Hewitt* (1853), 1 Ohio St. 511, and *Zangerle v. Std. Oil Co.* (1945), 144 Ohio St. 506, 30 O.O. 151, 60 N.E.2d 52, to structures and improvements on real property.

{¶ 14} *Teaff*, decided a century and a half ago, is a landmark case on the legal requirements to identify a fixture. *Teaff* presents appropriate criteria to employ in determining whether an item is a fixture and, consequently, real property.

4

*Zangerle*, however, too eagerly applied fixture analysis to structures or improvements on real property.

{¶ 15} The *Zangerle* court had under its sights various types of buildings, structures, improvements, and fixtures built at an oil refinery. Rather than applying a separate analysis for each type of construction, the *Zangerle* court applied fixture analysis to all types of construction. The court emphasized the second criterion, whether the chattel is devoted primarily to the business conducted on the premises or primarily to the use of the land. *Zangerle* at paragraph four of the syllabus. The application of fixture analysis to buildings, structures, and improvements, and this overriding emphasis on this second criterion were the crux of our disagreement in *Kings Entertainment.* We will not employ fixture analysis for buildings, structures, and improvements; we will employ fixture analysis for fixtures because R.C. 5701.02(A) contains this term and, therefore, requires us to determine whether a contested item is a fixture.

{¶ 16} A complete analysis under R.C. 5701.02, in any event, requires a decision on whether the disputed item is a building, a structure, an improvement, or a fixture. Since the instant transactions occurred before the General Assembly provided definitions for these terms in July 1992, 144 Ohio Laws, Part I, 1528-1529, we will apply dictionary definitions as we undertake this complete analysis. R.C. 1.42.

{¶ 17} The Dictionary of Real Estate Appraisal (1984) 39, defines "building" as:

"A structure, usually roofed and walled, that is erected for permanent use."

{¶ 18} The disputed conveyors and material-handling systems are not structures erected for permanent use. Litton has attached this equipment to elements of a building. The Limited can easily remove or reconfigure the equipment without damaging the building. Thus, the disputed items are not buildings.

**{¶ 19}** This dictionary, at 294, defines "structure" as:

"An edifice or building; an improvement."

**{¶ 20}** The disputed equipment is not a structure under this definition; it is not an edifice or building.

**{¶ 21}** The same dictionary, at 158, defines "improvements" as:

"Buildings or other relatively permanent structures or developments located on, or attached to, land."

**{¶ 22}** The disputed equipment is not an "improvement" as defined in this dictionary. The conveyors and material-handling systems are neither buildings nor other relatively permanent structures located on or attached to the land. The Limited can remove, replace, or reconfigure the equipment without damaging the building.

**{¶ 23}** Finally, we consider whether this equipment is a fixture. The Dictionary of Real Estate Appraisal, at 127, defines "fixture" as:

"An article that was once personal property but has since been installed or attached to the land or building in a rather permanent manner, regarded in law as part of the real estate."

**{¶ 24}** This definition mirrors the definition contained in *Teaff,* 1 Ohio St. at 527:

"A fixture is an article which was a chattel, but which by being physically annexed or affixed to the realty, became accessory to it and part and parcel of it."

**{¶ 25}** *Teaff,* at 529-530, also contains the enduring test to determine whether an article is a fixture:

"[T]he united application of the following requisites will be found the safest criterion of the fixture.

"1st. Actual annexation to the realty, or something appurtenant thereto.

"2d. Appropriation to the use or purpose of that part of the realty with which it is connected.

"3d.  The intention of the party making the annexation, to make the article a permanent accession to the freehold—this intention being inferred from the *nature* of the article affixed, the *relation* and *situation* of *the party* making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made."  (Emphasis *sic*.)

{¶ 26} Litton has bolted the conveyors and material-handling systems to the structure; thus, this equipment satisfies the first test of attachment to the realty.

{¶ 27} As to the second question, whether The Limited has appropriated the equipment to the use or purpose of the realty to which it is connected, the answer is "no."  The Limited uses the equipment to handle merchandise in its business operations.  The Limited has not appropriated the equipment to the use of the realty.  The equipment benefits The Limited's retail business because the equipment allows The Limited to move merchandise through its distribution centers.  Another business would not necessarily require conveyors and material-handling systems; so another business would remove the equipment and use in another way the space the equipment occupied.

{¶ 28} Third, The Limited did not permanently attach the equipment to the building.  The manner of attachment, nuts and bolts, allows for easy detachment and removal.  In fact, The Limited removed some equipment from a New Jersey facility and installed it in the Lane Bryant center.  As already pointed out, The Limited could remove, replace, or reconfigure the equipment with no damage to the building.

{¶ 29} Finally, Litton claimed in its notice of appeal that the BTA's decision violated Litton's rights to due process and equal protection of the laws because the BTA did not follow the statute or precedent.  Litton did not present any proposition of law on these points.  In a footnote, Litton explained that it could not fully discuss the claims due to page constraints, but that it did not withdraw the claim of error.

**{¶ 30}** We have dismissed issues if a party did not brief them. *State ex rel. Brooks v. Trans World Airlines, Inc.* (1990), 53 Ohio St.3d 713, 560 N.E.2d 772. We have also said, "Vague allegations of denial of due process or equal protection are not sufficient to establish [one's case]." *State ex rel. Smith v. Columbus* (1993), 66 Ohio St.3d 271, 272, 611 N.E.2d 827. We regard these constitutional claims as waived, since Litton did not present any argument on them.

**{¶ 31}** Accordingly, we hold that the BTA's decision is reasonable and lawful, and we affirm it.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____