[Cite as *Cleveland Mun. School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 107 Ohio St.3d 250, 2005-Ohio-6434.]

BOARD OF EDUCATION OF THE CLEVELAND MUNICIPAL SCHOOL DISTRICT, APPELLEE, *v.* CUYAHOGA COUNTY BOARD OF REVISION ET AL., APPELLEES; VLAXOS, L.L.C., APPELLANT.

[Cite as *Cleveland Mun. School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 107 Ohio St.3d 250, 2005-Ohio-6434.]

*Taxation — Real property — Value — Property owner fails to show economic duress was factor in fixing purchase price, when.*

(No. 2004-1078 — Submitted August 23, 2005 — Decided December 21, 2005.)

APPEAL from the Board of Tax Appeals, Nos. 2002-R-2641 and 2002-R-2642.

_____

PER CURIAM.

{¶ 1} Appellant, Vlaxos, L.L.C. ("Vlaxos"), contends that the price it paid for certain real property was the result of economic duress and, therefore, the sale was not an arm's-length sale. We disagree and, therefore, affirm the decision of the Board of Tax Appeals ("BTA").

{¶ 2} The property involved in this case, located in the Grand Arcade at 408 and 500 West St. Clair Avenue in Cleveland, consists of two condominium parcels, known as units 101 and 102, which house the Greek Isles Restaurant. The property was purchased by Vlaxos in December 2000 for $1,350,000. The Board of Education of the Cleveland Municipal School District ("BOE") filed a real property valuation complaint with the Cuyahoga County Board of Revision ("BOR") contending that as a result of the recent sale, the true value of the property should be increased to $1,350,000 for tax year 2000. Vlaxos filed a countercomplaint contending that the auditor's valuation of $415,000 was the correct value.

**{¶ 3}** After a hearing, the BOR determined that the valuation should remain at the auditor's valuation of $415,000. The BOE filed two appeals from the BOR's decision to the BTA. Before the appeals were decided by the BTA, they were dismissed upon the authority of *Cleveland Elec. Illum. Co. v. Lake Cty. Bd. of Revision*, 96 Ohio St.3d 165, 2002-Ohio-4033, 772 N.E.2d 1160, and remanded to the BOR for proper certification. After the actions were properly certified by the BOR, the BOE refiled its two appeals with the BTA. The BTA consolidated the appeals for hearing and decision.

**{¶ 4}** The parties waived a hearing before the BTA and relied on the testimony and evidence presented to the BOR. At the BOR hearing, the only witness presented by Vlaxos was George Servetas, one of Vlaxos's two members, the other being Nicholas Stavridis. Prior to the sale, Servetas and Stavridis leased the property in question for their Greek Isles Restaurant from West Sixth Associates Limited Partnership. The term of the lease was five years, from April 15, 1993, through April 14, 1998. Under the terms of the lease, the rent escalated until it reached $6,281.33 per month for the time period February 1, 1995, through April 14, 1998.

**{¶ 5}** Although the lease contained a provision for renewal for an additional five years, there is no evidence that any attempt was made to exercise that provision. At some time after the expiration of the lease, the lessor said it would raise the rent to $16,000 per month. In the alternative, the lessor said it would sell the property for $1,800,000. The parties apparently carried on negotiations from sometime after the expiration of the original lease on April 14, 1998, until December 2000, when the price had been negotiated down to $1,350,000.

**{¶ 6}** Servetas testified that when they initially moved into the space in 1992, they spent over $725,000 to finish the space and equip the restaurant, and if

they were forced to move, they probably could not take more than $50,000 to $60,000 of the improvements.

{¶ 7} The $1,350,000 purchase price was primarily financed by two notes from the Metropolitan Bank & Trust Company ("Bank"), both dated December 22, 1999. One note was in the amount of $725,000, and the other was for $580,000. The $725,000 note had an initial interest rate of 8.25 percent for the first five years, after which the interest rate was to be reset until the note matured in January 2011. The other note, in the amount of $580,000, matured on April 1, 2001, and carried an interest rate of prime plus one percent. The remainder of the purchase price apparently was paid in cash. Servetas stated that Vlaxos needed a Small Business Administration ("SBA") loan to purchase the property; however, he never identified which loan was the SBA loan.

{¶ 8} Each of the Bank's notes was secured by an open-end mortgage and security agreement covering the real and personal property located on the property. In addition, Stavridis and Servetas each personally guaranteed payment of the loans; however, neither Stavridis nor Servetas pledged any personal assets for the loans. Contrary to Servetas's testimony, there is no evidence that either of their spouses signed any note or guaranty.

{¶ 9} After obtaining title to the property, Vlaxos leased it to Stavserv, Inc., d.b.a. Greek Isles Restaurant, for five years at an initial rental rate of $165,600 per year, payable in monthly installments. The rental rate could be adjusted during the term to reflect changes in the costs of financing.

{¶ 10} The BTA determined that the purchase was not the result of economic duress and that the purchase price, $1,350,000, was the best evidence of value.

{¶ 11} The cause is before this court on an appeal as of right.

{¶ 12} Because the parties waived a hearing before the BTA, the only testimony and evidence in this matter is that presented to the BOR. As the

appellant at the BTA, and the party asserting that the valuation determined by the board of revision should be increased, the BOE bore the burden of proving that the value it alleged should be the true value. The BOE met that burden by introducing documents establishing that the property sold in December 2000 for $1,350,000. *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision* (1996), 76 Ohio St.3d 13, 16, 665 N.E.2d 1098. This court has held that when property has been the subject of a recent arm's-length sale between a willing buyer and a willing seller, the sale price of the property shall be the true value for taxation purposes. *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision,* 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782.

{¶ 13} Although the presumption exists that the sale price is the best evidence of true value, that presumption may be rebutted where the sale is not an arm's-length sale. *Lakeside Ave. Ltd. Partnership v. Cuyahoga Cty. Bd. of Revision* (1996), 75 Ohio St.3d 540, 544, 664 N.E.2d 913. If the presumption that the sale price was the result of an arm's-length transaction is successfully rebutted, then the sale price may not be the best evidence of true value, and a review of independent appraisals based upon other factors may become appropriate. *Pingue v. Franklin Cty. Bd. of Revision* (1999), 87 Ohio St.3d 62, 64, 717 N.E.2d 293.

{¶ 14} In its first two propositions of law, Vlaxos contends that its purchase was economically coerced and, therefore, was not an arm's-length transaction. In *Walters v. Knox Cty. Bd. of Revision* (1989), 47 Ohio St.3d 23, 546 N.E.2d 932, syllabus, we held that "[a]n arm's-length sale is characterized by these elements: it is voluntary, *i.e.,* without compulsion or duress; it generally takes place in an open market; and the parties act in their own self-interest."

{¶ 15} Thus, it became Vlaxos's burden to rebut the presumption that the sale price represented true value. This court discussed the concept of rebuttable presumptions in *Myocare Nursing Home, Inc. v. Fifth Third Bank*, 98 Ohio St.3d

4

545, 2003-Ohio-2287, 787 N.E.2d 1217, stating that "where a rebuttable presumption exists, a party challenging the presumed fact must produce evidence of a nature that counterbalances the presumption or leaves the case in equipoise. Only upon the production of sufficient rebutting evidence does the presumption disappear." Id. at ¶ 35.

{¶ 16} Vlaxos contends that its purchase was made under economic coercion because the landlord threatened to increase the rent if it did not purchase the property, and if it moved to another location, much of the restaurant equipment that was installed on the property would have to be left behind.

{¶ 17} In *Lakeside,* the facts established that the purchase in question was made as the result of economic coercion, and therefore the sale was not an arm's-length sale, and the sale price might not represent the true value of the property. As a result, we reversed the decision of the BTA as unlawful and unreasonable. The purchase in *Lakeside* was not voluntary, because the purchaser never had any real choice, but was compelled to purchase the property at the price that had been set by the seller or face a "swift and sure corporate death." Id., 75 Ohio St.3d at 549, 664 N.E.2d 913.

{¶ 18} Vlaxos states that "[t]he facts of this case closely mirror those of the *Lakeside* case * * *." However, a review of the facts shows that the evidence in this case does not demonstrate the economic compulsion found in *Lakeside.* The sale price in *Lakeside* was not subject to negotiation. Here, Servetas testified that he negotiated the price down from $1,800,000 to $1,350,000. In *Lakeside*, the buyer's primary asset-based lender refused to finance the purchase and prohibited the company using the property (Triton) from applying its cash or working capital to acquire the property. Triton tried to secure financing through another bank, which also refused to finance the purchase. The financing was finally secured when the principals of Triton formed the Lakeside Avenue Limited Partnership ("Lakeside"), which, along with Triton and the principal

shareholder of Triton, executed a note for just over 50 percent of the purchase price. The note was secured by a mortgage on the purchased property and the real and personal property of Triton, and certain personal assets owned by Triton's principal shareholder. In addition, Triton, Lakeside, and Triton's principal shareholder signed two notes in favor of the seller, the city of Cleveland loaned monies to Lakeside, and the state of Ohio made a grant to Lakeside. Triton was also required to put a certain amount of its working capital into an escrow account. Here, there is no evidence that any bank turned down the financing of the purchase, and Vlaxos financed over 95 percent of the purchase price. Furthermore, there is no evidence that the financing of the property was out of the ordinary.

{¶ 19} In *Lakeside*, an officer of Triton testified that "there wasn't any land or location to relocate to." Id., 75 Ohio St.3d at 541, 664 N.E.2d 913. Here, it was evident that the owners, Servetas and Stavridis, had invested time, effort, and money in this location, and there would be a loss incurred for the fixtures that would be left behind if they were forced to move. However, there was nothing in the record to indicate that the owners had made any efforts to determine whether the business could have been relocated and the costs of such relocation. The testimony in *Lakeside* was that failure to purchase the property would have resulted in Triton's bankruptcy. While the owners of the Greek Isles Restaurant would have lost much of their investment in the fixtures if they had had to move, there was no evidence that the restaurant could not be relocated or that losing this location would cause the owners to file bankruptcy.

{¶ 20} The copy of the lease in the record contains a five-year renewal clause. While the amount of rent for the renewal period is not clear on the copy, there is no evidence to indicate that the owners attempted to exercise the lease renewal option for a second five years. The evidence in this case does not show

that Vlaxos's purchase was the result of economic duress and, therefore, the presumption that the sale was an arm's-length sale was not rebutted.

{¶ 21} Near the end of the argument supporting its first proposition of law, Vlaxos states that its rights of equal protection under the Ohio and United States Constitutions were violated because using the sale to assess Vlaxos's property treated it differently from other involuntary purchasers of property. Vlaxos presented no further discussion of that allegation. We will not respond to that allegation because we regard it as waived. In *Litton Sys., Inc. v. Tracy* (2000), 88 Ohio St.3d 568, 728 N.E.2d 389, Litton claimed in its notice of appeal that its rights to due process and equal protection were violated. Litton, like Vlaxos, did not present any proposition of law on those points. Litton claimed that it could not fully discuss the claims because of the page constraints. We regarded the constitutional claims as waived because Litton did not present any argument on them, stating:

{¶ 22} "We have dismissed issues if a party did not brief them. *State ex rel. Brooks v. Trans World Airlines, Inc.* (1990), 53 Ohio St.3d 713, 560 N.E.2d 772. We have also said, 'Vague allegations of denial of due process or equal protection are not sufficient to establish [one's case].' *State ex rel. Smith v. Columbus* (1993), 66 Ohio St.3d 271, 272, 611 N.E.2d 827." (Brackets sic.) *Litton*, 88 Ohio St.3d at 573, 728 N.E.2d 389.

{¶ 23} In its third proposition of law, Vlaxos contends that a pledge of non-real estate items as collateral and the personal guarantee of multiple loans does not constitute typical financing in a real estate transaction. A review of the record fails to show any evidence to support that contention. The record shows that the only pledge of non-real estate items was the security agreement included in the open-end mortgage that pledged the personal property on the premises defined as the mortgaged property, which might not otherwise be deemed to form part of the premises or constitute a fixture. There is no testimony or evidence in

the record to establish what a typical financing arrangement would be for a transaction of this type. Therefore, Vlaxos has failed to provide any evidence to support its third proposition of law and, therefore, we reject it.

{¶ 24} For all of the foregoing reasons, we find that the decision of the BTA was reasonable and lawful and, therefore, affirm it.

Decision affirmed.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., concurs in judgment only.

_____

**PFEIFER, J., concurring in judgment only.**

{¶ 25} "Although the sale price is the 'best evidence' of true value of real property for tax purposes, it is not the only evidence. A review of independent appraisals based upon factors other than the sale price is appropriate where it is shown that the sale price does not reflect true value. (*Columbus Bd. of Edn. v. Fountain Square Assoc., Ltd.* [1984], 9 Ohio St.3d 218, 219 [9 OBR 528, 459 N.E.2d 894], construed.)" *Ratner v. Stark Cty. Bd. of Revision* (1986), 23 Ohio St.3d 59, 23 OBR 192, 491 N.E.2d 680, syllabus. This standard is fair.

{¶ 26} In this case, Vlaxos purchased the building housing its restaurant. Vlaxos contends that the sale price was higher than fair market value. Apparently, Vlaxos was willing to spend as much as it did because of the significant value of improvements it had made to the building, which Vlaxos could not take with it if it had to move. I believe that this is enough to defeat the rebuttable presumption that sale price is the best evidence of value. Vlaxos did not, however, take the next step required by *Ratner* of obtaining an independent appraisal. Accordingly, Vlaxos cannot prevail. I concur in judgment.

_____

Todd W. Sleggs & Associates, Todd W. Sleggs, and Susan K. French-Scaggs, for appellant.

James H. Hewitt Co., L.P.A., and James H. Hewitt III, for appellee Board of Education of the Cleveland Municipal School District.

_____