OPINION.
We have removed this case from the accelerated calendar.
 {¶ 1} The price paid for real property in a recent, arm's-length transaction is the proper measure of the value of the property for tax purposes. In this dispute over the value of commercial property, the trial court abused its discretion when it overruled the determination of the Hamilton County Board of Revision and lowered the value of the property at issue. For the reasons set forth below, the court's judgment is reversed.
 Sale of Property Results in Increased Valuation {¶ 2} Appellee Little Silver, LLC, has operated a restaurant on Clough Pike in Hamilton County since 1997. Little Silver had rented the building in which it operated the restaurant until June 2003, when it purchased the property. The Real Property Conveyance Fee Statement of Value and Receipt — the only documentation of the sale in the record — listed $460,000 as the "consideration for real property." The document, which counsel for Little Silver had signed, contained a separate line for the amount "of the total consideration paid for items other than real property." That line was blank. The form also contained a section titled "Conditions of sale (Check all that apply)." The only item checked on the form was "Other: ARMS LENGTH."
 {¶ 3} In 2003, appellant Forest Hills Local School District Board of Education filed a complaint to raise the valuation of the property to the purchase price. While there is some discussion of a prior hearing in the record, there is no documentation of the hearing. Little Silver appeared at that hearing, through its owner, Gary Sammons, and apparently presented evidence that some of the purchase price had included restaurant equipment. The Hamilton County Board of Revision *Page 3 
("BOR") set the value of the property to $407,800. This reduction from the purchase price was apparently the result of a finding by the BOR that $52,200 of the purchase price had included the purchase of restaurant equipment. That decision was not appealed.
 {¶ 4} In 2006, Little Silver and the board of education filed a second action regarding the value of the property. In that proceeding, Little Silver argued that a portion of the purchase price had included purchase of the business. It presented evidence that the value of the business was around $226,935. The evidence used to establish that value was a letter from a certified public accountant that used a capitalized-earnings approach. In this approach, the accountant used only the net income for the restaurant for the years 2002, 2003, and 2004. Those income figures were multiplied by five, and the average of those three figures was then used to project an "estimated value" for the business.
 {¶ 5} Little Silver also presented appraisal evidence that the value of the property was $265,000. Little Silver argued that this valuation was in line with the valuation of the property in previous years. The previous valuations ranged from $200,900 in 1996 to $231,500 in 2002, according to the auditor's website.
 {¶ 6} There was some mention at the BOR hearing that Sammons had felt pressure to buy the property once he had learned that the owner intended to sell it. During his testimony, Sammons cited the example of another restaurant that had recently failed. Sammons claimed that it had failed because it had relocated, but there was no direct evidence of this.
 {¶ 7} Little Silver has admitted in its brief that "[n]o evidence was presented with regards to [sic] negotiations between [the] prior building owner and the *Page 4 
Appellee other than the threat to sell the building. The only evidence regarding the motivation of the Appellee for the purchase was the testimony regarding the threat to sell the building and the fear by the Appellee that if he did not purchase the building their business would be ruined."
 {¶ 8} After the hearing, the panel noted that the failure of Little Silver to present testimony from its appraiser and its accountant made its case difficult to understand. The panel did not trust the business valuation, noting that "you don't know where the five [multiplier for valuating the business] came from, which was a very important figure in him determining the business value." The panel was also concerned with the appraisal evidence because it did not believe that comparable properties were actually comparable. The chair noted that "the closest in size was the second one and that's just a bar. It's not a restaurant like yours is."
 {¶ 9} The BOR was also confused by the overall argument that Little Silver had purchased a business that it had been operating since 1997. During cross-examination, Sammons admitted that Little Silver had owned the business, but not the property, since 1997. After the panel had deliberated, it returned to clarify the issue. When asked directly if Little Silver had owned the business in 1997, Sammons did not answer the question. The BOR declined to adjust the valuation.
 {¶ 10} Little Silver appealed the decision to the trial court. The parties presented no additional evidence at the hearing. The trial court issued a decision that stated that "the purchase price included consideration other than for the real estate alone * * *" and set the value of the property at $265,000. This was the value contained in the appraisal presented by Little Silver. The school district and the Hamilton County Auditor appealed. *Page 5 
 The Fork in the Road {¶ 11} In three assignments of error, the school district and the auditor challenge the decision of the trial court to reduce the value of the property. But before we begin to analyze the issues before the court, it is important to note the two distinct prongs of Little Silver's argument in the trial court. On the one hand, Little Silver argued that the purchase price included the purchase of both the property and the business. On the other hand, Little Silver argued that the purchase price was the result of economic duress.
 {¶ 12} The two arguments were mutually exclusive. If the purchase price reflected the purchase of both the business and the property, as Little Silver attempted to imply through the documents presented below, then the purchase price was not artificially inflated by economic duress. But the economic-duress argument presupposed that the amount paid represented only the purchase of the real property. Both could not be true. Nonetheless, we address each argument in turn.
 The First Prong-Arm's-Length Transaction {¶ 13} In their first assignment of error, the school district and the auditor claim that the trial court erred when it failed to adopt the recent arm's-length sale price as the value for the property. In their second assignment of error, they argue that the trial court improperly relied on the historical value of the property when setting the value. We agree with both propositions.
 {¶ 14} When property has been the subject of a recent arm's-length sale between a willing buyer and a willing seller, the sale price of the property is its true *Page 6 
value for taxation purposes.[1] That presumption may be rebutted by showing that the sale is not an arm's-length sale.[2] It is only when that presumption is successfully rebutted that a review of appraisals or other evidence is appropriate.[3]
 {¶ 15} The Ohio Supreme Court has given guidance on the rebuttal of this presumption, holding that "where a rebuttable presumption exists, a party challenging the presumed fact must produce evidence of a nature that counterbalances the presumption or leaves the case in equipoise. Only upon the production of sufficient rebutting evidence does the presumption disappear."[4] It was Little Silver's burden in this case to rebut the presumption.[5]
 {¶ 16} A recent sale is not an arm's-length transaction if it is the product of economic duress. The seminal case on economic duress isLakeside Ave. Ltd. Partnership v. Cuyahoga Cty. Bd. ofRevision.[6] In that case, the property owner presented evidence that it had purchased the property at a price that was not subject to negotiation.[7] The owner presented testimony that, if it was forced to relocate, it would lose its major contract and 50 percent of its business.[8] In the course of purchasing the property, the owner attempted to finance the purchase through two banks, but both refused to finance the sale. One of the banks concluded that "the asking price for the property was simply `outrageous.'"[9] The other bank, the owner's *Page 7 
primary asset-based lender, refused to finance the transaction "apparently due to the excessive asking price."[10] The owner had to form a separate company to purchase the property and "undertook some extraordinary, if not desperate, efforts to obtain sufficient financing for the transaction."[11] Under these facts, the court concluded that the sale "was not an arm's-length sale due to the compulsive business circumstances fueling Lakeside's decision to acquire the property in question. Thus, the sale price was not indicative of the subject property's true market value."
 {¶ 17} In this case, Little Silver presented no evidence regarding the negotiations that had led up to its purchase of the property. It provided no documentation of the sale itself, other than the Real Property Conveyance Fee Statement of Value and Receipt form. That form, signed by counsel for Little Silver, indicated that the sale was an arm's-length transaction. Little Silver presented no evidence that any financial institution had denied its request for financing — because the purchase price was too high or for any other reason — or that it had to engage in any extraordinary steps to finance the purchase because the purchase price was excessive.
 {¶ 18} The only evidence in this record indicating that Little Silver was forced to purchase the property was the testimony by the owner that the business would not have survived a move. Little Silver presented no evidence relative to its business that supported this assertion. In a recent decision involving another restaurant, the Ohio Supreme Court refused to apply the Lakeside holding when "there was nothing in the record to indicate that the owners made any efforts to determine whether the business could have been relocated and the costs of such relocation. * * * While the *Page 8 
owners * * * would have lost much of their investment in the fixtures if they had had to move, there was no evidence that the restaurant could not be relocated or that losing this location would cause the owners to file bankruptcy."[12]
 {¶ 19} Little Silver presented no evidence that the business would not have survived a move. In fact, there was no evidence that Little Silver would have had to move if the building was sold to someone else or that a new owner would not have allowed Little Silver to remain under the same lease terms. Sammons's speculation on the matter did not amount to "evidence of a nature that counterbalances the presumption or leaves the case in equipoise."[13]
 {¶ 20} At oral argument, counsel for the school district indicated that the restaurant cited as an example by Little Silver before the BOR had not closed or even moved at the time that the sale in this case occurred. Under these circumstances, that could have influenced the decision to purchase the property. But the date of the move of the other restaurant is not in the record, so we can not determine when the other restaurant failed. Nor was there evidence presented that the other restaurant failed because it moved.
 {¶ 21} Absent a showing that a sale was not an arm's-length transaction, it is not proper to consider appraisal evidence to determine the value of the property.[14] Since Little Silver failed to present evidence to establish that it was forced into the sale, the consideration of outside evidence relating to the value of the property was improper. While Little Silver argues that the school district and the auditor failed to *Page 9 
object to the admission of the evidence before the BOR, the failure to object to the admission of the evidence was not the same as conceding that the evidence was properly considered in the face of a recent sale.
 {¶ 22} For the foregoing reasons, we sustain the school district's and the auditor's first two assignments of error.
 The Second Prong-Purchase of the Business {¶ 23} In their third assignment of error, the school district and the auditor argue that that the trial court improperly reduced the value of the property because Little Silver did not present evidence of any severable business value. We agree.
 {¶ 24} The argument that the purchase price for the property included the purchase price of the business is as confusing to this court as it was to the BOR. Little Silver owned the business. On cross-examination, the owner testified that he had operated it since 1997 and that he had paid the taxes related to the business. When asked again if he "owned the business back then [in 1997]," he declined to answer.
 {¶ 25} Little Silver presented no evidence documenting the sale of the business. Little Silver presented no evidence that the owner of the property had ever owned the business or that the owner of the property had the ability to sell the business that Little Silver purported to purchase. The only documentation of the purchase of the property in the record indicates that the entire purchase price was for the real estate. In a similar case, the Eighth Appellate District held that the value of property should not be adjusted when, inter alia, "the taxpayer's conveyance fee statement to the auditor denied that the price included payment for any tangible or intangible personal property" and "[t]here was no evidence from which any *Page 10 
reasonable person could value the alleged non-realty aspects of the sales transaction."[15]
 {¶ 26} In light of the complete lack of evidence in the record concerning a sale of the business, Little Silver failed to establish what portion of the purchase price would have included the purchase of a business. The value of the business could not have meant the equipment associated with the business (ovens, refrigerators, etc.) because that was the consideration when the value was originally reduced from $460,000 to $407,800 in 2003.
 {¶ 27} The only evidence Little Silver presented regarding the "purchase price" of the business was the letter from the accountant giving the "estimated value" of the business. This is troubling for a number of reasons. First, there was no testimony that this figure was the actual or approximate purchase price of the business. And the letter was generated in 2006 and included net income from the second half of 2003 and all of 2004 — income generated after the date of the sale. Further, it would seem that the use of a capitalized-earnings approach — an approach that establishes a value based on a business's net income — would have only been a useful valuation for a purchaser who was not already receiving that income.
 {¶ 28} In sum, the record does not support the finding that the purchase price included "consideration other than the real estate alone." The equipment was already factored into the reduced valuation, and Little Silver could not possibly have bargained to purchase a business that it already owned. Little Silver presented no competent, credible evidence to the contrary. *Page 11 
 {¶ 29} For the foregoing reasons, we sustain the school district's and the auditor's third assignment of error.
 Conclusion {¶ 30} Since Little Silver failed to present competent, credible evidence either that the purchase of the property in this case was the result of economic duress or that the purchase encompassed more than the real estate, the trial court abused its discretion when it determined that the value of the property was an amount other than the price paid for the property — less the adjustment made by the BOR for equipment during the 2003 hearing.
 {¶ 31} The judgment of the trial court is reversed, and this case is remanded with instructions to deny the appeal of appellee Little Silver, LLC, and to enter judgment for appellants Dusty Rhodes, Auditor of Hamilton County, Ohio, and the Forest Hills Local School District Board of Education, setting the value of the subject property at $407,800.
Judgment reversed and cause remanded.
HILDEBRANDT, P.J., and PAINTER, J., concur.
[1] Bd. of Edn. of the Cleveland Mun. School Dist. v. Cuyahoga Cty.Bd. of Revision, 107 Ohio St.3d 250, 2005-Ohio-6434, 838 N.E.2d 647, at ¶ 12, citing Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. ofRevision, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782.
[2] Id. at ¶ 13, citing Lakeside Ave. Ltd. Partnership v. CuyahogaCty. Bd. of Revision, 75 Ohio St.3d 540, 544, 1996-Ohio-175,664 N.E.2d 913.
[3] Id. at ¶ 13, citing Pingue v. Franklin Cty. Bd. of Revision,87 Ohio St.3d 62, 64, 1999-Ohio-252, 717 N.E.2d 293.
[4] Id. at ¶ 15, citing Myocare Nursing Home, Inc. v. Fifth ThirdBank, 98 Ohio St.3d 545, 2003-Ohio-2287, 787 N.E.2d 1217, at ¶ 35.
[5] Id.
[6] 75 Ohio St.3d 540, 1996-Ohio-175, 664 N.E.2d 913.
[7] Id.
[8] Id.
[9] Id.
[10] Id. at 549, 664 N.E.2d 913.
[11] Id.
[12] Bd. of Edn. of the Cleveland Mun. School Dist. v. Cuyahoga Cty.Bd. of Revision, 107 Ohio St.3d 250, 2005-Ohio-6434, 838 N.E.2d 647, at ¶ 19.
[13] See Anderson Twp. Historical Soc. v. Rhodes, 1st Dist. No. C-070187, 2008-Ohio-1436, at ¶ 9 (A purchaser's subjective belief that he was compelled to make the purchase is inconsequential.); Bd. of Edn.v. Franklin Cty. Bd. of Revision, 10th Dist. No. 03AP-106,2004-Ohio-586, at ¶ 15 (same).
[14] See Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. ofRevision, 78 Ohio St.3d 325, 329, 1997-Ohio-212, 677 N.E.2d 1197.
[15] Harvard Refuse, Inc. v. Cuyahoga Cty. Bd. of Revision (Feb. 5, 1987), 8th Dist. Nos. 51634 through 51677. *Page 1