[Cite as *Highland Towers Akron, L.L.C. v. Summit Cty. Bd. of Revision*, 2012-Ohio-4386.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

HIGHLAND TOWERS AKRON, LLC

    Appellees

    v.

SUMMIT COUNTY BOARD OF
REVISION, et al.

    Appellants

C.A. No.      26338

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV 2011-08-4890

DECISION AND JOURNAL ENTRY

Dated: September 26, 2012

WHITMORE, Presiding Judge.

{¶1} Defendant-Appellants, the Akron City School District Board of Education ("the School Board"), the Summit County Board of Revision, and the Summit County Fiscal Officer (collectively "Appellants"), appeal from the judgment of the Summit County Court of Common Pleas. This Court reverses.

I

{¶2} Plaintiff-Appellee, Highland Towers Akron, LLC ("Highland Towers"), is a 95-unit apartment building on West Market Street in Akron. On June 10, 2010, Highland Towers purchased the property adjacent to it, parcel 68-21969 ("the Property"), for $325,000. At the time of the sale, the Property had been appraised at $236,650. Owing to the higher price Highland Towers actually paid for the Property, the School Board filed a complaint with the Board of Revision, seeking an increase in the Property's valuation for purposes of the 2010 tax year. The Board of Revision agreed with the increased valuation of $325,000.

{¶3} Highland Towers appealed the decision of the Board of Revision to the Summit County Court of Common Pleas. In its argument, Highland Towers averred that the increase in the Property's valuation was inappropriate because the sale was not an arms-length transaction. The trial court agreed with Highland Towers and reversed the decision of the Board of Revision. The court ordered the Property to be valued at $236,650 for the 2010 tax year.

{¶4} Appellants now appeal from the trial court's judgment and raise one assignment of error for our review.

II

Assignment of Error

THE DECISION AND ORDER [OF THE SUMMIT COUNTY COMMON PLEAS COURT] IS UNLAWFUL, UNREASONABLE, AND ERRONEOUS * * *.

{¶5} In their sole assignment of error, Appellants argue that the trial court erred by reversing the decision of the Board of Revision because the evidence showed that Highland Towers' purchase of the Property was the result of an arm's-length transaction. We agree.

{¶6} Pursuant to R.C. 5717.05, a county court of common pleas may hear an appeal from the decision of the county's board of revision. "R.C. 5717.05 requires more than a mere review of the decision[] of the board of revision * * *." *Black v. Bd. of Revision of Cuyahoga Cty.*, 16 Ohio St.3d 11, 14 (1985). In reviewing the board's decision, "the common pleas court is to give the * * * decision no deference." *Lockhart Dev. Co. v. Summit Cty. Bd. of Revision*, 9th Dist. No. 25728, 2011-Ohio-5000, ¶ 8. "Under [R.C.] 5717.05, a common pleas court must 'independently weigh and evaluate all evidence properly before it' in order to 'make an independent determination concerning the valuation of the property at issue.'" *Lockhart Dev. Co.* at ¶ 8, quoting *Black* at 13. "On the other hand, an appellate court should only disturb the

trial court's independent judgment upon an abuse of discretion." *JRB Holdings, L.L.C. v. Wayne Cty. Bd. of Revision*, 9th Dist. No. 05CA0048, 2006-Ohio-1042, ¶ 6, quoting *Fairlawn Assoc., Ltd. v. Summit Cty. Bd. of Revision and Fiscal Officer*, 9th Dist. No. 22238, 2005-Ohio-1951, ¶ 10. *Accord Black* at 14. An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶7} "[W]hen [] property has been the subject of a recent arm's-length sale between a willing seller and a willing buyer, the sale price of the property shall be 'the true value for taxation purposes.'" *Berea City School Dist. Bd. of Educ. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, ¶ 13, quoting R.C. 5713.03. Even so, the presumption that sale price is the best evidence of true value is rebuttable upon a showing that the sale was not an arm's-length sale. *Cleveland Mun. School Dist. Bd. of Educ. v. Cuyahoga Cty. Bd. of Revision*, 107 Ohio St.3d 250, 2005-Ohio-6434, ¶ 13. "An arm's-length sale is characterized by these elements: it is voluntary, i.e., without compulsion or duress; it generally takes place in an open market; and the parties act in their own self-interest." *Walters v. Knox Cty. Bd. of Revision*, 47 Ohio St.3d 23 (1989), syllabus. "The absence of even a single one of these factors is sufficient to demonstrate that a transaction was not conducted at arm's length." *Strongsville Bd. of Educ. v. Cuyahoga Cty. Bd. of Revision*, 112 Ohio St.3d 309, 2007-Ohio-6, ¶ 13.

{¶8} As the party seeking an increase in the Property's valuation, the School Board initially bore the burden of proof at the Board of Revision. *Cleveland Mun. School Dist. Bd. of Educ.* at ¶ 12. The School Board presented evidence that Highland Towers purchased the Property for $325,000, and Highland Towers never disputed that $325,000 was the purchase price. Accordingly, the School Board met its burden, and a rebuttable presumption existed that

the true value of the Property was $325,000. *Id.*; *Lakeside Ave. Ltd. Partnership v. Cuyahoga Cty. Bd. of Revision*, 75 Ohio St.3d 540, 544-545 (1996). As the party challenging the presumption, it was then the burden of Highland Towers to show that its purchase of the Property was not the result of an arm's-length transaction. *See Cleveland Mun. School Dist. Bd. of Educ.* at ¶ 13-15.

{¶9}     The three reasons Highland Towers offered in support of its argument were that: (1) it was compelled to secure additional parking for its tenants, and the Property was the only feasible parking area in the vicinity; (2) another entity whose business seriously would have undermined the value of Highland Towers' own property had expressed an interest in buying the Property; and (3) the owner of the Property had offered Highland Towers financing conditions that otherwise might not have been available to it. Thomas Dillon, the President of Highland Towers, was the only witness who testified at the hearing before the Board of Revision.

{¶10} Dillon testified that he had owned Highland Towers for about five years. He explained that Highland Towers was built in 1962 and had 90 parking spaces available for its tenants in a below-ground garage as well as "[p]robably close to * * * forty [spaces] outside." As the composition of the building's tenants shifted over the years from mainly long-term residents to mainly short-term, student residents, the demand for parking spaces increased. Dillon stated that he regularly received complaints from tenants before he purchased the Property due to the lack of sufficient parking spaces. According to Dillon, there were no other available parcels in the area that he could have purchased to satisfy the parking problem.

{¶11} Dillon estimated that the Property was on the market for two to three years before he purchased it. During that time period, a few tenants had leased it. While contemplating the purchase of the Property to ease the parking problem, Dillon learned from the Property's realtors

that "the only person they had that was interested [in the Property] * * * was an abortion clinic * * *." Dillon stated that fact motivated him even further to buy the Property because he "really didn't think that [an abortion clinic] was compatible with a residential building" as far as sharing a property border.

{¶12} Dillon could not recall the original asking price for the Property or any specific negotiations in which he and the seller engaged. Dillon only recalled that the price he ultimately paid to purchase the Property was not "very much off of what [the seller] was asking" for it. Dillon believed that he had paid a premium for the Property due to a favorable financing arrangement and the fact that it might have been difficult for him to otherwise secure a loan in the current economic climate. After Dillon purchased the Property, he built a walkway connecting its parking lot to the parking lot for Highland Towers. He also leased the Property to a tenant for approximately $2,500 a month in rent.

{¶13} "A sale conducted under duress is characterized by 'compelling business circumstances * * * clearly sufficient to establish that a recent sale of property was neither arm's-length in nature nor representative of true value.'" *Strongsville Bd. of Educ.*, 112 Ohio St.3d 309, 2007-Ohio-6, at ¶ 16, quoting *Lakeside Ave. Ltd. Partnership*, 75 Ohio St.3d at 548. In *Lakeside*, the Ohio Supreme Court determined that the purchase price of certain property did not reflect the property's true value because the purchase had not arisen as the result of an arm's-length transaction. *Lakeside* at 549. There, a company entered into a substantial contract with a trucking firm while the company leased certain property. The lessor of the property then informed the company of its intention to sell the leased property. The property was never placed on the open-market. Moreover, although the lessor offered the company the opportunity to purchase the property, the price was non-negotiable and so excessive that several lenders refused

to finance the purchase. Shareholders from the company took "extraordinary, if not desperate, efforts to obtain sufficient financing," that included personal guarantees. *Id.* The Supreme Court described the company's choice to purchase the property as a choice between survival and "swift and sure corporate death (bankruptcy) on the other hand," as the company needed the leased property to maintain the contract it had signed with the trucking firm that accounted for some fifty percent of its total business activity. *Id.* The Court thus concluded that the company's choice to buy the property never amounted to a "real choice." *Id.*

{¶14} The Supreme Court distinguished *Lakeside* from the result it reached in *Cleveland Mun. School Dist. Bd. of Educ. v. Cuyahoga Cty. Bd. of Revision*. In that case, the Court considered another situation in which a lessee had purchased property from a lessor to maintain its restaurant business on the leased site. *Cleveland Mun. School Dist. Bd. of Educ.*, 107 Ohio St.3d 250, 2005-Ohio-6434, at ¶ 1-5. The evidence introduced before the board of revision was that the lessee had invested money to finish the space and to equip the restaurant during the tenancy of the lease. The term of the lease was five years with the option to renew. Before the renewal occurred, however, the lessor informed the lessee that there would be a substantial increase in the rental fee for the new five-year term. Alternatively, the lessee could buy the property. The two negotiated the purchase price, the lessee obtained financing, and the lessee purchased the property. In arguing that an arm's-length transaction had not occurred, the lessee presented testimony that it had invested a significant amount of money improving the leased space and most of those improvements could not be transferred to another space. Accordingly, the lessee argued that it was coerced to buy the property in order to protect its investment. *Id.* at ¶ 16. The Supreme Court rejected the argument. The Court explained that there was no evidence that the price the leased space sold for was excessive or unreasonable, as both parties

had negotiated the price and there was no evidence that the lessee had difficulty in obtaining financing. *Id.* at ¶ 19. The Court further indicated that there was no evidence the lessee could not have relocated the restaurant or that actually doing so would have caused the owners to suffer severe financial repercussions such as bankruptcy. *Id.* Finally, the Court noted that there was no evidence in the record as to what the actual increase in the lessee's rental fee would have been had the lease been renewed and no evidence that the lessee actually had attempted to exercise the lease renewal option. *Id.* at ¶ 20. Consequently, the Court determined that the sale was the result of an arm's-length transaction. *Id.* at ¶ 20.

{¶15} The evidence Highland Towers presented in this case is wholly distinguishable from the evidence presented in *Lakeside* and far more analogous to the case of *Cleveland Mun. School Dist. Bd. of Educ.* The first reason that Highland Towers gave in support of its argument was that it was constrained to purchase the Property in order to provide adequate parking for its residents. Yet, Dillon himself had owned the property for several years without the additional spaces. He also testified that there were 130 spaces available (90 indoor spaces and approximately 40 outdoor ones) for the tenants of 95 units. Although Dillon testified that tenants routinely complained about the parking, he did not testify that he had lost even a single tenant due to the parking situation. As such, Highland Towers did not present any evidence that it actually would have incurred financial difficulty had it not purchased the Property. *See Cleveland Mun. School Dist. Bd. of Educ.* at ¶ 19. *Compare Lakeside*, 75 Ohio St.3d at 549.

{¶16} It is also unclear whether the Property was in fact the only available space for additional parking. The only evidence that no other available spaces existed for additional parking in the vicinity was Dillon's blanket statement to that effect. He did not testify that he actually attempted to find other buildings or spaces for purchase. Indeed, later in his testimony

he opined that the Property's purchase price was not proportional to its actual value because "all over that neighborhood you could find just as new and better office space for less money * * *." Dillon then specified that he wanted the Property because "it was so immediate [he] didn't have to pave a whole big parking lot or go through a lot of it * * * [and] all [he] had to do was build a good connection." Thus, it is not clear from the record whether it is true that no other available spaces existed or whether spaces were available, but none that were as convenient for Dillon as the Property.

{¶17} The next reason Highland Towers gave in support of its argument was that the financing it received supported a finding of economic duress. Highland Towers failed to present any evidence that the purchase price it paid for the property was excessive or not subject to negotiation. While Dillon could not recall the specific negotiations that took place when Highland Towers purchased the property, he never claimed that the purchase price was fixed and not subject to any negotiations. *Compare Lakeside* at 549. Moreover, there was "no evidence that the financing of the property was out of the ordinary." *Cleveland Mun. School Dist. Bd. of Educ.* at ¶ 18. Dillon stated that the financing he obtained from the buyer was favorable and might not be available elsewhere due to the economy, but he did not claim to have even attempted to secure financing elsewhere first. There was no evidence that any bank ever refused to provide financing to Highland Towers for the Property. *See id. Compare Lakeside* at 549.

{¶18} The final reason Highland Towers gave in support of its argument that its purchase was not the result of an arm's-length transaction was that it had to purchase the property to prevent another entity from using the space. Specifically, Dillon testified that he was far more motivated to buy the Property when he discovered an abortion clinic was interested in it. The argument was, at best, speculative. There was no evidence that the entity actually was

interested in the property other than the fact that an unidentified realtor apparently told Dillon that it was. Moreover, Highland Towers failed to explain how the fact that some other entity expressed an interest in the Property demonstrated any economic coercion on the part of the seller. *See Cleveland Mun. School Dist. Bd. of Educ.* at ¶ 20. At least one part of the whole purpose of an open market, a requirement for an arm's-length transaction, is to generate the interest of more than one buyer in the subject property. *See Walters*, 47 Ohio St.3d at syllabus.

{¶19} The Property was on the open market for two to three years before Highland Towers purchased it. Although other tenants had leased the Property before Highland Towers purchased it, Highland Towers never did so. Dillon never explained why it would not have been possible for Highland Towers to simply lease the property instead of purchasing it. Further, this scenario is distinguishable from those in which a buyer previously leased property and either invested substantial amounts of money in or staked the outcome of its business upon the continued use of the property. *Compare Lakeside* at 549. Dillon testified that he spent several thousand dollars building a walkway between the Property and Highland Towers, but he only made those improvements after the purchase occurred. He did not stand to lose any investments in the Property before he purchased it. *Compare Cleveland Mun. School Dist. Bd. of Educ.* at ¶ 19; *Lakeside* at 549.

{¶20} Based on our review of the record, we are constrained to reach the conclusion that the trial court abused its discretion by reversing the decision of the Board of Revision. The record reflects that the School Board met its burden to prove an increased valuation was warranted by setting forth evidence that Highland Towers purchased the Property for $325,000. *See Cleveland Mun. School Dist. Bd. of Educ.* at ¶ 12. Highland Towers then bore the burden of rebutting the presumption that $325,000 was the true value of the property. *Id.* at ¶ 13-15.

Highland Towers did not satisfy its burden. None of the evidence that it set forth before the Board of Revision showed that the sale here was anything but the result of an arm's-length transaction. The record reflects that the sale was voluntary, took place on the open market, and was the result of the parties acting in their own self-interest. *Walters* at syllabus. Accordingly, the trial court abused its discretion by reversing the Board of Revision's decision. Appellants' sole assignment of error is sustained.

## III

{¶21} Appellants' assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

11

Costs taxed to Appellees.

> BETH WHITMORE
> FOR THE COURT

MOORE, J.
CONCURS.

DICKINSON, J.
CONCURRING.

INTRODUCTION

{¶22} The Summit County Court of Common Pleas found that Highland Towers Akron LLC's purchase of a piece of real estate was not an arm's-length transaction. Based on that finding, it decreased the value of the property for taxation purposes to the level set by the county auditor's appraisal. I concur in the majority's opinion because, even viewing the evidence in a light most favorable to Highland, it did not present sufficient evidence to prove that the sale was not conducted at arm's length.

{¶23} For several years before acquiring the property that is at issue in this appeal, Highland owned an 8-story, 95-unit apartment building near the corner of West Market Street and Portage Path in Akron. Carved out from what would have been a corner lot for Highland was a small piece of property housing a small office building and parking lot. The evidence indicates that Highland had been leasing parking spaces from the previous owner of the office building while the property had been on the market for two to three years before Highland bought it for $325,000. At the time of the sale in 2010, the Summit County Auditor had appraised the property at $236,650.

**{¶24}** Following the sale, the Akron City School District Board of Education sought an increase in true value of the property for taxation purposes for the year 2010. The Board of Education attached to its complaint a conveyance fee statement and general warranty deed showing that Highland had bought the property in June 2010 for $325,000. The Board of Education did not present any additional evidence. The Board of Revision held a hearing and took testimony from Thomas Dillon, the principal of Highland. Mr. Dillon testified that he was compelled to buy the property in order to protect his investment in the neighboring apartment building and to take advantage of favorable financing terms offered by the seller.

**{¶25}** After the Board of Revision increased the value of the property to the sale price of $325,000, Highland appealed that decision to the Summit County Common Pleas Court. Without taking any additional evidence, the common pleas court reversed the Board of Revision's decision. The common pleas court determined that the sale had not been an arm's-length transaction and held the value of the property to be the value appraised by the county auditor. The Board of Education has appealed that decision to this Court. The majority has held that the trial court "abused its discretion" by reversing the Board of Revision's decision because the record reflects that Highland failed to rebut the presumption that the sale was conducted at arm's length.

**{¶26}** In this case, the Board of Education argued to the common pleas court that some of Mr. Dillon's testimony was speculative or not credible and that the undisputed evidence weighs in favor of a finding that the purchase was conducted at arm's length. The Board of Education did not present any contrary evidence regarding the arm's-length nature of the transaction. The common pleas court apparently believed the testimony of Mr. Dillon, applied

the facts to the legal definition of duress, and determined that those facts met the applicable standard.

## STANDARD OF REVIEW

{¶27} The Ohio Supreme Court has held that the common pleas court's independent judgment regarding the true value of real property for taxation purposes "shall not be disturbed absent a showing of abuse of discretion." *Black v. Bd. of Revision of Cuyahoga County*, 16 Ohio St. 3d 11, paragraph one of the syllabus (1985). "Specifically, an appeals court should not question the trial court's judgment, unless such determination is unreasonable, arbitrary, or unconscionable." *Id.* at 14. That standard is easier to apply when the trial court must choose between competing methodologies used by various appraisers. In this case, the dispute impacting the true value of the property hinges on the trial court's determination of whether the sale was an arm's-length transaction. In any event, according to precedent, we must apply a sufficiency-of-the-evidence standard of review, but couch it in terms of abuse of discretion. *See State ex rel. Cordray v. Helms*, 192 Ohio App. 3d 426, 2011-Ohio-569, ¶ 48 (9th Dist.) ("When applying a sufficiency-of-the-evidence standard, a court of appeals should affirm a trial court if 'the evidence is legally sufficient to support the judgment as a matter of law.'") (quoting *Bryan–Wollman v. Domonko*, 115 Ohio St. 3d 291, 2007-Ohio-4918, ¶ 3).

{¶28} Thus, the question is whether the evidence is sufficient to support the trial court's conclusion that the sale was not conducted at arm's length, but we must phrase it in terms of deciding whether the trial court "act[ed] unreasonably," that is, whether it abused its discretion, in reaching that conclusion. *Wellington Square LLC v. Clark County Auditor*, 2d Dist. No. 2009-CA-87, 2010-Ohio-2928, ¶ 36; *Park Place Props. LLC v. Bd. of Revision of Miami County, Ohio*, 2d Dist. No. 2001-CA-35, 2002 WL 242707, *5 (Feb. 15, 2002) ("As the Supreme Court

observed in *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597: 'most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. A decision is unreasonable if there is no sound reasoning process that would support [it].'"); *see also Fairlawn Assoc. Ltd. v. Summit County Bd. of Revision*, 9th Dist. No. 22238, 2005-Ohio-1951, ¶ 16 ("We find that it was entirely reasonable for the court to have concluded that this evidence did not support a true value for the Hilton and thus was not sufficient to rebut the evidence of Fairlawn Assoc[iates].").  I concur in the majority opinion because, even viewing the evidence in the light most favorable to Highland, the evidence is not legally sufficient to prove that the sale was not an arm's-length transaction because the business reasons offered by Highland for the purchase do not rise to the level of duress under applicable law.

APPEARANCES:

ROBERT A. BRINDZA, DANIEL MCINTYRE, DAVID H. SEED, DAVID A. ROSE, and JENNIFER A. ANTOON, Attorneys at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and MILTON RANKINS, Assistant Prosecuting Attorney, for Appellant.

SCOTT H. RUPORT and ANTHONY R. BEERY, Attorneys at Law, for Appellee.