STRONGSVILLE BOARD OF EDUCATION ET AL., APPELLANTS, *v*. CUYAHOGA COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Cite as *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision,* 112 Ohio St.3d 309, 2007-Ohio-6.]

(No. 2005–1638—Submitted September 19, 2006—Decided January 17, 2007.)

———————

LANZINGER, J.

{¶ 1} The issue before us is whether the Board of Tax Appeals ("BTA") erred in relying upon appraisal evidence instead of the recent sale price to determine

property value for tax purposes. Because its decision was not unreasonable or unlawful, we affirm the BTA's decision.

{¶ 2} This appeal as of right concerns the valuation of real property located at 17800 Royalton Road in Strongsville. The property, consisting of 21.4783 acres of land and a three-story office building built and occupied by the Ceres Group, Inc. ("Ceres"), contains a total of 121,770 square feet. The tax years at issue are 2000 and 2001.

{¶ 3} Ceres sold the property in a sale-leaseback transaction to Royalton Investors, L.L.C., and Big T Investments, L.L.C. (collectively, "Royalton"), for $16 million on August 3, 2001. As part of the sale-leaseback transaction, Ceres signed a 15-year triple net lease [1] with the buyers. The lease agreement permits Ceres to extend the lease term for four additional five-year periods but does not contain any provision permitting Ceres to buy back the property at the end of the lease.

{¶ 4} Michael Cavataio, a director of Ceres, testified before the BTA concerning the circumstances of the property transaction. A balloon payment was due on Ceres's original mortgage for the construction of the building at the time of the sale-leaseback, and Ceres was looking to raise additional capital. Cavataio stated that Ceres solicited offers, received four or five proposals, and decided to go with Royalton, which had offered the "best amount of money." A $20 million offer was rejected because it required Ceres to take back a note on the property, and the deal could not be put together quickly enough.

{¶ 5} Ceres signed a long-term lease for the property at the time of the $16 million sale to Royalton. Cavataio testified that the sale would not have been completed if a lease had not been executed concurrently. No rental amount was set when the property was offered for sale; it was to be adjusted to the sale price. For accounting purposes, the lease was treated as an operating lease, and Ceres recognized a gain on the sale.

{¶ 6} In 2001, the city of Strongsville and the Strongsville Board of Education (individually and collectively, "Strongsville") filed a complaint against the valuation of real property with the Cuyahoga County Board of Revision ("BOR") for tax year 2000. In the complaint, Strongsville alleged that the property had a true value of $9,512,000, compared to the auditor's valuation of $8,326,400. Title to the property was transferred to Royalton on August 3, 2001. As a result of the sale, Strongsville later sought to amend its complaint before the BOR to increase the value to $16 million.

---

1. Under a triple net lease, the tenant is responsible for paying utilities, maintenance, real estate taxes, and insurance. See The Appraisal of Real Estate (Appraisal Institute, 12th Ed.2001) 477.

{¶ 7} Strongsville filed another complaint over valuation of the real property in 2002 against the new owners, alleging that on the basis of the August 3, 2001 sale, the property should be valued at $16 million, rather than the $8,326,400 set by the auditor.

{¶ 8} The BOR held a hearing and, on the basis of the evidence presented, determined the value of the property to be $9.5 million for both tax years 2000 and 2001.

{¶ 9} Strongsville appealed the decisions of the BOR to the BTA, where they were combined for hearing. To support its claim of value, Strongsville presented the testimony of Julian Vanni, who had appraised the fee simple interest in the property at $16 million as of January 1, 2000, and January 1, 2001.

{¶ 10} The property owners presented the appraisal of Paul Van Curen, who had valued the property at $9.5 million for tax year 2000 and $9.3 million for tax year 2001. The BTA found that based upon a preponderance of the evidence, the most reliable indicator of value was Van Curen's appraisal.

{¶ 11} Strongsville has appealed the BTA's decision to this court as a matter of right.

{¶ 12} When a piece of property has been sold in a recent arm's-length transaction, the sale price of that property shall be considered the true value for taxation purposes. *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782, at ¶ 13. For the sale price to be considered the true value of the property, the sale must have been conducted at arm's length. Id. at ¶ 15. If no arm's-length sale occurred, the price does not necessarily represent the property's true value, and reliance on appraisal evidence for valuation is appropriate.

{¶ 13} An arm's-length transaction possesses three primary characteristics. "[I]t is voluntary, *i.e.*, without compulsion or duress; it generally takes place in an open market; and the parties act in their own self-interest." *Walters v. Knox Cty. Bd. of Revision* (1989), 47 Ohio St.3d 23, 25, 546 N.E.2d 932. The absence of even a single one of these factors is sufficient to demonstrate that a transaction was not conducted at arm's length. See *Kroger Co. v. Hamilton Cty. Bd. of Revision* (1993), 67 Ohio St.3d 145, 147, 616 N.E.2d 877 (finding lack of arm's-length transaction based on the absence of a sale on the open market).

{¶ 14} Although resolution of the question of an arm's-length sale is an essential first step in the *Berea* analysis, because the BTA's decision was rendered before *Berea*, the BTA failed to specifically address the issue. Nevertheless, the findings that were made by the BTA in essence answer that important question. The BTA, however, engaged in the analysis envisioned by our decision in *Berea*. Although not phrased in the terms of that decision, the

BTA essentially found that the recent sale did not possess the characteristics required of an arm's-length transaction.

{¶ 15} The BTA specifically determined that the sale-leaseback transaction was marked by the presence of duress. This finding is sufficiently supported by the evidence presented to the BTA. "In reviewing decisions of the BTA, 'this court has repeatedly stated that it is not a trier of fact de novo, but that it is confined to its statutorily delineated duties (R.C. 5717.04) of determining whether the board's decision is "reasonable and lawful."'" *Bethesda Healthcare, Inc. v. Wilkins,* 101 Ohio St.3d 420, 2004-Ohio-1749, 806 N.E.2d 142, ¶ 18, quoting *Episcopal Parish of Christ Church, Glendale v. Kinney* (1979), 58 Ohio St.2d 199, 201, 12 O.O.3d 197, 389 N.E.2d 847; accord *First Baptist Church of Milford v. Wilkins,* 110 Ohio St.3d 496, 2006-Ohio-4966, 854 N.E.2d 494, ¶ 9; *Soin v. Greene Cty. Bd. of Revision,* 110 Ohio St.3d 408, 2006-Ohio-4708, 853 N.E.2d 1165, ¶ 13. In discharging its function as factfinder, "[t]he [BTA] is vested with wide discretion in determining the weight to be given to evidence and the credibility of witnesses which come before the board," *Cardinal Fed. S. & L. Assn. v. Cuyahoga Cty. Bd. of Revision* (1975), 44 Ohio St.2d 13, 73 O.O.2d 83, 336 N.E.2d 433, paragraph three of the syllabus, such that the court "will not reverse the BTA's determination on credibility of witnesses and weight given to their testimony unless we find an abuse of this discretion." *Natl. Church Residence v. Licking Cty. Bd. of Revision* (1995), 73 Ohio St.3d 397, 398, 653 N.E.2d 240.

{¶ 16} A sale conducted under duress is characterized by "compelling business circumstances * * * clearly sufficient to establish that a recent sale of property was neither arm's-length in nature nor representative of true value." *Lakeside Ave. Ltd. Partnership v. Cuyahoga Cty. Bd. of Revision* (1996), 75 Ohio St.3d 540, 548, 664 N.E.2d 913. In *Lakeside,* the finding of duress was based on the buyer's need to purchase property at an inflated price in order to continue in business and avoid bankruptcy. Id. at 549, 664 N.E.2d 913. The facts here are also sufficient to support the BTA's conclusion that the sale was influenced by duress.

{¶ 17} In making its finding of duress, the BTA considered evidence of Ceres's financial situation and the influence that situation had upon the sale of the property in question. Ceres had a balloon mortgage payment due but did not have the cash on hand to make the payment. Cavataio testified that because of the need to extend the mortgage period before the property was sold, Ceres had already been subjected to double penalty payments that he deemed outrageous. The need to sell the building was so pressing that Ceres rejected an offer for the property higher than the one ultimately accepted, because of the longer time it would have taken to complete the proposed transaction. Contrary to Strongsville's contention that the final sale price was not affected by Ceres's urgent need

to sell, acceptance of the lower offer represented a discount in the gain realized by Ceres.

{¶ 18} Notably, the BTA did not decide, nor are we deciding today, that any articulable motivation to sell is sufficient to support a finding of economic duress. The BTA concluded that Ceres was more than simply motivated to sell; it was instead "compelled to enter into [the sale-leaseback transaction] because it needed to raise capital quickly."

{¶ 19} There was sufficient evidence, based on the circumstances surrounding the sale of the property in question, to support a finding by the BTA that this was not an arm's-length transaction. In their testimony, the appraisers for both Strongsville and Ceres stated that the sale was not at arm's length. We cannot say that concluding that the sale took place under duress was an abuse of the BTA's discretion.

{¶ 20} Following a finding of duress, which is analogous to a determination that a sale was not an arm's-length transaction, sale price is not a controlling, or even a reliable, indication of property value. Instead, it becomes necessary to rely on appraisal evidence in order to fix the value of the property.

{¶ 21} In this case, the BTA considered evidence from two different appraisers. An appraisal conducted by Van Curen set the value of the property at $9.5 million for tax year 2000 and $9.3 million for tax year 2001. The other appraisal, conducted by Vanni, valued the property at $16 million. After inquiring into the methodology used by each appraiser, the BTA chose to rely exclusively on Van Curen's appraisal in fixing property value.

{¶ 22} We will defer to the BTA's choice of appraisal. With respect to the valuation of real property, it is the "BTA's task * * * to determine the fair market value of the property," and that issue is "a question of fact, the determination of which is primarily within the province of the taxing authorities." *DAK, PLL v. Franklin Cty. Bd. of Revision,* 105 Ohio St.3d 84, 2005-Ohio-573, 822 N.E.2d 790, ¶ 14. In reviewing the BTA's disposition of the factual issues in a property valuation case, "[t]his court does not sit either as a super BTA or as a trier of fact de novo." Id. at ¶ 16. Deference is proper in this case because we hold that the BTA did not abuse its discretion in reaching its decision.

{¶ 23} Strongsville argues, however, that due to errors in the decision, the BTA did indeed abuse its discretion. The presence of minor inconsistencies and slight inaccuracies in the BTA's decision is not sufficient to render it unreasonable or unlawful. If the inconsistencies and errors in a decision by the BTA would not change the final outcome, the mistakes will not by themselves render a decision unreasonable or unlawful. See *Cambridge Commons Ltd. Partnership v. Guernsey Cty. Bd. of Revision,* 106 Ohio St.3d 27, 2005-Ohio-3558, 830 N.E.2d 1147, ¶ 8–10. We will defer to the BTA so long as the mistakes do not provide the sole

basis for the BTA's decision and there are other factors that support its conclusion. Id.

{¶ 24} In its decision below, the BTA mistakenly stated that the contract for the sale of the property contained a bargain purchase option. It also demonstrated confusion regarding the value of the lease.

{¶ 25} The BTA did not base its decision solely on those mistakes. Indeed, it did not even discuss them further in its analysis of the transaction. Instead, in finding the presence of duress, the BTA focused its attention solely on the pressures on Ceres that forced it to sell its property quickly. Because the BTA's mistakes as to the presence of a bargain purchase option and the present-day value of the lease do not alter the final outcome of the decision, those mistakes do not render the decision unreasonable or unlawful.

{¶ 26} The remaining inconsistency identified by Strongsville stems not from errors on the part of the BTA, but results from Strongsville's own misunderstanding. Contrary to Strongsville's contention, there is no conflict between the BTA's finding that the sale price was directly related to the amount of rent that Ceres was willing to guarantee and the statement that the sale price was not dependent on a predetermined rental payment. It is true that the sale price was not negotiated with respect to a specific fixed rental payment. That does not mean that the rent and sale price were unrelated. Cavataio testified to the direct connection of the two, stating that the rent was to be "adjusted to the sale price. So, if we got a higher sale price, we had to pay more rent."

## Conclusion

{¶ 27} Even though the BTA made its decision before our holding in *Berea* was announced, we hold that the BTA's decision in this case to rely on appraisal evidence, rather than sale price, to determine property value is compatible with our holding in *Berea*. The valuation of property is committed to the BTA's authority, and the BTA did not abuse its discretion in choosing one appraisal over another. Also, despite the presence of minor inaccuracies and inconsistencies in the BTA's analysis, we do not find that its final decision was unreasonable or unlawful. Accordingly, we affirm the BTA's valuation of the property.

Decision affirmed.

MOYER, C.J., WAITE, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

CHERYL L. WAITE, J., of the Seventh Appellate District, sitting for RESNICK, J., whose term ended on January 1, 2007.

CUPP, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

Kolick & Kondzer, Thomas A. Kondzer, and John P. Desimone, for appellants.

Ulmer & Berne, L.L.P., and Richik Sarkar, for appellees, Royalton Investors, L.L.C., Big T Investments, L.L.C., and Ceres Group, Inc.