COLUMBUS CITY SCHOOL DISTRICT BOARD OF EDUCATION, APPELLANT, *v.*
FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES.
[Cite as *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of
Revision,* 134 Ohio St.3d 529, 2012-Ohio-5680.]

*Taxation—R.C. 5715.19—Filing of valuation complaint before a board of
revision by owner's spouse invokes board's jurisdiction—Real-property
valuation—Short sale may be voluntary if lender acted as a typically
motivated seller would.*

(No. 2011-2096—Submitted October 23, 2012—Decided December 6, 2012.)

APPEAL from the Board of Tax Appeals, No. 2008-Q-2457.

_____

**Per Curiam.**

{¶ 1} In this appeal of a real-property-valuation case, the Columbus City
School District Board of Education ("school board") challenges a decision of the
Board of Tax Appeals ("BTA") that affirmed the Franklin County Board of
Revision's ("BOR's") adoption of a sale price as the value of the property at issue
for tax year 2007. The school board argues that the BOR lacked jurisdiction
because the valuation complaint had been signed and submitted by the property
owner's spouse, who was not a lawyer. Even though R.C. 5715.19(A)(1)
explicitly authorizes a spouse to file on behalf of the other spouse, the school
board argues that the filing of the complaint did not invoke the BOR's
jurisdiction. *See Sharon Village Ltd. v. Licking Cty. Bd. of Revision*, 78 Ohio
St.3d 479, 678 N.E.2d 932 (1997). We disagree with the school board. The
school board also argues that the BTA acted unreasonably and unlawfully in
affirming the use of a sale price. It argues that the sale was a "short sale" and that
duress in the sale prevented it from being an arm's-length transaction. *See* R.C.

5713.03. We conclude that the record furnishes a sufficient basis to support the BTA's finding. Accordingly, we affirm its decision.

**Background**

{¶ 2} On March 26, 2008, the owner of the property at issue, Susanne Novak, apparently acting through her husband, Kurt Novak, filed a complaint challenging the auditor's valuation of the property for tax year 2007. (Although no testimony or document directly establishes the marital relationship of Kurt and Susanne Novak, the record raises the strong inference that the two are married, and the school board does not contend otherwise.) The complaint asserted that the sale price of $179,000 should be adopted as the value of the property, rather than $295,100, the value as determined by the auditor. The school board filed a countercomplaint on May 21, 2008, asserting that the auditor's valuation should be retained.

{¶ 3} Susanne Novak purchased the property from Paul and Dianna Patterson in August 2007 for $179,000. Subsequently, the property was assigned by Susanne Novak to Parkland Investment Group, L.L.C., in May 2008 for no consideration.

{¶ 4} On August 21, 2008, the BOR held a hearing at which Kurt Novak testified that "we purchased [the property at issue] on a short sale" because the previous owners "were behind on their payments." Novak presented listings and sale prices of allegedly similar properties in the same subdivision over the preceding six months. Novak's exhibit showed three sales over the period; the highest sale price was $48.82 per square foot, the lowest $16.49 per square foot, and the median was $30.33 per square foot. There were 14 listings; the average was $69 per square foot. Novak claimed that his exhibit showed that properties in the area were overvalued for assessment. His argument appeared to be that the price-per-square-foot numbers established the propriety of the sale price because that price was $58.80 per square foot. But Novak made no adjustments for

differing features of the properties—in particular, there were no indications of, or adjustments for, the circumstances of sale of the alleged comparables.

{¶ 5} At the time of the BOR hearing, the property at issue was being rented for $2,200 per month, with an option to purchase for $230,000. Novak also testified that the property was in "good" condition when purchased, but stated that it "probably needs some work to get it retail sold at the high end" of $230,000. On cross-examination, Novak testified that the property had been acquired as part of a course of business in which Novak's company actively solicited owners who were "behind on their mortgage payments." Novak admitted that "it was certainly a distress sale" from the owner-seller's standpoint. Novak asserted that the sale was at arm's length because there was no relationship between the seller and the buyer, and because the bank negotiated for the highest possible price in its own best interest.

{¶ 6} On December 5, 2008, the BOR issued a decision adopting the sale price of $179,000 as the value of the property. The school board appealed to the BTA, and the BTA held a hearing on April 13, 2011, at which the school board and the county appeared. The owner did not appear.

{¶ 7} The school board argued that the BOR lacked jurisdiction because the complaint was presented by someone who was not Susanne Novak herself or a lawyer. Additionally, the school board argued that the sale should not be considered an arm's-length transaction. On November 15, 2011, the BTA issued its decision. The BTA compared signatures in the record and found that "the signature on the complaint is consistent with the signature of Kurt Novak, not Susanne Novak." *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, BTA No. 2008-Q-2457, 2011 WL 5924473, *2 (Nov. 15, 2011). Drawing the inference from the entire record that Kurt and Susanne were married to each other, the BTA held that under *Dayton Supply & Tool Co., Inc. v. Montgomery Cty. Bd. of Revision*, 111 Ohio St.3d 367, 2006-Ohio-5852, 856

N.E.2d 926, " 'a complaint executed and signed by a non-attorney husband/wife when the property which is the subject of the complaint is owned by the spouse is executed with the requisite fiduciary interests.' " *Id.*

{¶ 8} Addressing the valuation issue, the BTA stated that in a short sale, the purchase price is less than the amount owed to the lender. The BTA characterized the school board's position as " 'constru[ing] the bank's consideration of the amount remaining on the mortgage as an indication of the "forced" or "involuntary" nature of the sale.' " *Id.*, *3, quoting *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, BTA No. 2008-A-1788 (July 12, 2011). In rejecting the school board's position, the BTA opined that " 'the only party that could have felt "forced" in the sale was the property owner, who had no role in the negotiation of the sale.' " *Id.*, quoting *Cincinnati School Dist.* According to the BTA, the bank " 'acted freely in negotiating the ultimate sale price, basing its position on the amount of money it needed to get out of the sale, not unlike any other seller's typical motivation.' " *Id.*, quoting *Cincinnati School Dist.* On this basis, the BTA concluded that "the best evidence of the subject's value as of the effective tax lien date [was] the amount for which it transferred in August 2007." *Id.*, *4.

{¶ 9} The school board appealed, and we now affirm.

### Analysis

### A. In authorizing an owner's spouse to file a complaint, R.C. 5715.19(A) does not substantially interfere with regulating the practice of law

{¶ 10} We first turn to an issue of the jurisdiction of the boards of revision. On the basis of *Sharon Village*, 78 Ohio St.3d 479, 678 N.E.2d 932, and its progeny, the school board asserts that the valuation complaint filed on behalf of Susanne Novak, the property owner, by her husband, Kurt Novak, is invalid because Kurt Novak was not a lawyer.

4

**{¶ 11}** Because the General Assembly, through a 1999 amendment to R.C. 5715.19(A), Sub.H.B. No. 694 ("H.B. 694"), 147 Ohio Laws, Part III, 5373, 5375, has specifically empowered a spouse to file a valuation complaint on behalf of the spouse who owns property, the school board's argument requires considering whether the legislative enactment can constitutionally be enforced in light of the duty to regulate the practice of law that the Ohio Constitution vests in this court. The Ohio Constitution, Article II, Section 1, confers general legislative authority on the General Assembly, pursuant to which the legislature has acted in creating the boards of revision and defining their authority. Ohio Constitution, Article IV, Section 2(B)(1)(g), confers upon this court original jurisdiction regarding "[a]dmission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law."

**{¶ 12}** " 'The practice of law is not limited to the conduct of cases in court. It embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts * * *.' " *Dayton Supply & Tool*, 111 Ohio St.3d 367, 2006-Ohio-5852, 856 N.E.2d 926, ¶ 7, quoting *Land Title Abstract & Trust Co. v. Dworken*, 129 Ohio St. 23, 193 N.E. 650 (1934), paragraph one of the syllabus. Consistent with this general doctrine, preparing and submitting a valuation complaint on behalf of a corporation or another natural person are understood to constitute the practice of law. *Sharon Village,* 78 Ohio St.3d at 481-482, 678 N.E.2d 932.

1. *In* Sharon Village*, the pertinent statutes prohibited a nonattorney agent of the corporate property owner from filing a valuation complaint*

**{¶ 13}** The school board relies on *Sharon Village* to support its argument that the valuation complaint filed by Kurt Novak on behalf of his wife, the property owner, is invalid. At the time *Sharon Village* was decided, R.C. 5715.19(A) provided that an owner of property in the county could file a

valuation complaint, Am.Sub.H.B. No. 603, 142 Ohio Laws, Part III, 4583, 4589, and R.C. 5715.13 provided that either the owner itself or an "agent" could perform the filing, 1953 Am.H.B. No. 1. Also at that time, R.C. 4705.01 stated:

> No person shall be permitted to practice as an attorney and counselor at law, or to commence, conduct, or defend any action or proceeding in which he is not a party concerned, either by suing or subscribing his own name, or the name of another person, unless he has been admitted to the bar by order of the supreme court in compliance with its prescribed and published rules.

Am.Sub.S.B. No. 219, 140 Ohio Laws, Part I, 662, 680-681.

{¶ 14} Based on our reading of the interplay of R.C. 4505.01, 5715.13, and 5715.19, we concluded that when a nonattorney signed a valuation complaint on behalf of a corporation, that person engaged in the unauthorized practice of law. *Sharon Village*, 78 Ohio St.3d at 483, 678 N.E.2d 932. We concluded, therefore, that the complaint did not invoke the jurisdiction of the board of revision. *Id.*

2. *The enactment of H.B. 694 in 1998 creates the potential for an interference with this court's regulation of the practice of law*

{¶ 15} Subsequently, the General Assembly amended R.C. 5715.19(A) to specify persons who may file on behalf of an owner. H.B. 694, 147 Ohio Laws, at 5375. R.C. 5715.19(A) now expressly authorizes a property owner's spouse to file a complaint on behalf of a property owner. This amendment creates a tension between the statute and this court's power to regulate the practice of law.

{¶ 16} We have already considered a case that lies at this intersection of legislative and judicial power. In *Dayton Supply & Tool*, 111 Ohio St.3d 367, 2006-Ohio-5852, 856 N.E.2d 926, a nonattorney corporate officer filed a

valuation complaint on behalf of the corporation, which owned the property at issue. We stated that even though R.C. 5715.19(A) specifically authorizes a corporate officer to file on behalf of the corporation, "[b]ecause we are solely responsible for regulating the practice of law, we are not compelled to accept this legislative amendment." *Id.*, ¶ 20. We then examined a number of factors to determine whether we would apply the statute as written.

{¶ 17} We stated that unlike the representatives who filed the complaints at issue in *Sharon Village*, a corporate officer has fiduciary duties to the corporation by which the corporation would hold the officer accountable for properly filing the complaint. *Id.*, ¶ 21-22. We stated that the particular dispute in *Dayton Supply & Tool* did not involve legal issues that called for an attorney's expertise. *Id.*, ¶ 24-25. We applied a recent holding that permitted corporate officers to file complaints in small-claims court to the filing of valuation complaints. *Id.*, ¶ 28. Finally, we considered public-interest factors. *Id.*, ¶ 30. We concluded that "a corporate officer does not engage in the unauthorized practice of law by preparing and filing a complaint with the board of revision and by presenting the claimed value of the property before the board of revision on behalf of his or her corporation, as long as the officer does not make legal arguments, examine witnesses, or undertake any other tasks that can be performed only by an attorney." *Id.*, ¶ 32.

{¶ 18} In *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 127 Ohio St.3d 63, 2010-Ohio-4907, 936 N.E.2d 489, we addressed whether a corporate officer's conduct at a hearing before the BTA could retroactively divest that tribunal of jurisdiction. In that context, we stated that "the only jurisdictional issue actually presented in [*Dayton Supply & Tool*] was 'whether a nonattorney corporate officer who prepares and files a complaint with a board of revision on behalf of the corporation engages in the unauthorized practice of law.' " (Emphasis deleted.) *Id.*, ¶ 16, quoting *Dayton Supply & Tool*,

111 Ohio St.3d 367, 2006-Ohio-5852, 856 N.E.2d 926, ¶ 1. We held that "[o]nce jurisdiction has been vested in an administrative tribunal by the proper filing of a complaint or notice of appeal, a later act constituting the unauthorized practice of law will not retroactively divest that tribunal of jurisdiction." *Id.*

3. *The legislature did not intend the courts to decide whether to apply H.B. 694 case-by-case based on a judicially crafted multifactor test*

{¶ 19} Having determined in *Dayton Supply & Tool* and *Cincinnati School Dist.* that a corporate officer may file on behalf of the corporation, we now address whether a property owner's spouse may file on his or her behalf. Although our original mode of analysis in *Dayton Supply & Tool* invites us to apply a multifactor test in determining this issue, we decline to do so. In particular, we decline to consider whether the filing spouse has fiduciary duties to the property-owning spouse with regard to the filing. Nor will we undertake an examination of whether, in this particular case, the complaint sets forth any difficult legal issues calling for an attorney's expertise.

{¶ 20} We decline to pursue this case-by-case mode of analysis because it is not appropriate for the BOR's jurisdiction to depend on the specific facts of the particular case. Litigants and agencies should be able to rely on the statute at all times or, alternatively, know that they may never rely on it. Furthermore, it is obvious that the General Assembly intended H.B. 694 to permit a spouse to file on behalf of the other spouse without regard to a multifactor test that the legislature did not prescribe.

4. *The filing of a valuation complaint by the owner's spouse validly invokes the BOR's jurisdiction*

{¶ 21} The issue for our review is not the degree to which the filing of the valuation complaint in this particular case constitutes the practice of law. Instead, we more broadly inquire into the constitutionality of the General Assembly

authorizing a nonattorney spouse to file on behalf of the other spouse, given that the Ohio Constitution assigns to this court the regulation of the practice of law.

{¶ 22} The General Assembly has the authority to determine how the jurisdiction of an administrative board may be invoked. *Zier v. Bur. of Unemp. Comp.*, 151 Ohio St. 123, 84 N.E.2d 746 (1949), paragraph one of the syllabus; *Akron Std. Div. of Eagle-Picher Industries, Inc. v. Lindley*, 11 Ohio St.3d 10, 11, 462 N.E.2d 419 (1984). Accordingly, we should defer to the General Assembly's decision regarding who may file a valuation complaint unless that provision substantially interferes with the regulation of the practice of law.

{¶ 23} The act of filling out and filing a complaint does not call for specific legal expertise. We so concluded in *Dayton Supply & Tool*. Moreover, the preparation of a complaint form calls for the most basic information: identifying the complainant and its relationship to the property at issue and setting forth the true value found by the county and the taxable value sought by the taxpayer. Preparing the complaint does not require exposition of legal arguments, which may be advanced later through the hearing and a brief. And complaints can be and routinely are amended—or deemed to be amended—during the course of the proceedings to reflect evidence presented and the arguments advanced.

{¶ 24} The General Assembly has not thrown open the door to allow any person to serve as another's agent. Instead, R.C. 5715.19(A)(1) sets forth a few specific relationships that tend to involve an ongoing relationship between the owner and the filer and that allow the owner to hold the filer accountable for his or her actions. The spousal relationship is one such relationship. Although spouses do not generally owe business-fiduciary duties to one another, they are bound together in an ongoing relationship of mutual support.

{¶ 25} It is sensible as a practical matter to allow a spouse to file on behalf of the other spouse. Moreover, even if there are some situations where the filing spouse gets in over his or her head or makes a mistake that legal expertise would

have avoided, denying jurisdiction to the board of revision is not the appropriate remedy. And finally, many mistakes can be avoided or corrected by hiring an attorney to prosecute the complaint after it has been filed.

{¶ 26} For these reasons, we conclude that a BOR's jurisdiction may validly be invoked when, in accordance with R.C. 5715.19(A)(1), a property owner's spouse files a valuation complaint on behalf of the owner.

**B. Whether the price obtained through a "short sale" equates with true value depends on a factual finding of how distress affected the sale**

{¶ 27} "The fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful." *Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52, 239 N.E.2d 25 (1968), syllabus. Although the BTA is responsible for determining factual issues, we " 'will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion.' " *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14, quoting *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino*, 93 Ohio St.3d 231, 232, 754 N.E.2d 789 (2001).

*1. A short sale may be voluntary if the evidence shows that the lender acted as a typically motivated seller would*

{¶ 28} When this case arose, R.C. 5713.03 required the county auditor, "[i]n determining the true value of any tract, lot, or parcel of real estate," to "consider the sale price of such tract, lot, or parcel to be the true value for taxation purposes" if the sale was one at "arm's length between a willing seller and a willing buyer" and if that sale occurred "within a reasonable length of time, either before or after the tax lien date." Am.Sub.H.B. No. 260, 140 Ohio Laws, Part II, 2665, 2722. It is well established that an arm's-length sale is one that is

voluntary, that is, " 'without compulsion or duress.' " *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 112 Ohio St.3d 309, 2007-Ohio-6, 859 N.E.2d 540, ¶ 13, quoting *Walters v. Knox Cty. Bd. of Revision*, 47 Ohio St.3d 23, 25, 546 N.E.2d 932 (1989). Thus, a key consideration in this case is whether the seller and buyer were both willing.

{¶ 29} A sale price from a short sale raises suspicion about the voluntary character of the sale because a short sale is a transaction in which the sale generates less than the amount owed on the mortgage note. *See Cattell v. Lake Cty. Bd. of Revision*, 11th Dist. No. 2009-L-161, 2010-Ohio-4426, ¶ 23. A short sale often occurs in the context of a mortgage-loan default, which is a distressed situation.

{¶ 30} In this case, it is clear that the property owner was under duress. At the BOR, Novak testified that his company solicited the sale because the owner was deeply in default on his mortgage loan. We regard such atypical pressure to sell as a kind of duress that negates the arm's-length character of the transaction. *Strongsville Bd. of Edn.* at ¶ 13-18. Moreover, a mortgage default raises the specter of imminent foreclosure, which is evidence that the seller is not a typically motivated participant. *See Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 30-31. *See also* R.C. 5713.04 ("The price for which such real property would sell at auction or forced sale shall not be taken as the criterion of its value").

{¶ 31} Although a short sale naturally raises the inference of distress and duress, the ultimate character of a sale as voluntary or involuntary is a factual matter to be resolved by the finder of fact based on the entire record before it. *Compare Lakeside Ave. Ltd. Partnership v. Cuyahoga Cty. Bd. of Revision*, 75 Ohio St.3d 540, 664 N.E.2d 913 (1996), *with Cleveland Mun. School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 107 Ohio St.3d 250, 2005-Ohio-6434, 838

N.E.2d 647. The standard for duress is whether compelling circumstances lead to the parties consummating a transaction whose terms would likely be unacceptable to a typically motivated seller or buyer. *Strongsville Bd. of Edn.,* 112 Ohio St.3d 309, 2007-Ohio-6, 859 N.E.2d 540, ¶ 16. A finding of duress lies within the province of the fact-finder, whose determination we will uphold as long as the record contains sufficient support. *Id.*, ¶ 15.

> *2. The BOR and the BTA found that the lender in this case acted to obtain the highest price it could, and the record supports that finding*

{¶ 32} In the present case, the BOR and the BTA concluded that the sale price qualified as the criterion of value under R.C. 5713.03 because, although the property owner experienced distress, its lender " 'acted freely in negotiating the ultimate sale price, basing its position on the amount of money it needed to get out of the sale, not unlike any other seller's typical motivation.' " BTA No. 2008-Q-2457, 2011 WL 5924473, *3, quoting *Cincinnati School Dist.,* BTA No. 2008-A-1788. That finding relates to Kurt Novak's testimony before the BOR that the bank, in seeking a sale price high enough to pay off as much of the loan as possible, was acting like a typically motivated seller. It lay within the BTA's discretion as a fact-finder to decide the credibility of this evidence and the weight to accord it. *See HealthSouth Corp. v. Testa*, 132 Ohio St.3d 55, 2012-Ohio-1871, 969 N.E.2d 232, ¶ 10, 25.

{¶ 33} The school board argues that the BTA erred by focusing on the motivations of the lender without considering the circumstances of the property owner. But the school board cites no authority for the proposition that the tax assessor should always view the motivations of the property owner as having more importance than those of a third party who is exercising control over the sale. Because the ultimate issue is whether the sale reflects the market, we construe the term "willing seller" in R.C. 5713.03 to encompass those persons controlling and influencing the sale on the seller's side of the transaction.

**{¶ 34}** In light of the foregoing discussion, the school board's reliance on *Cincinnati School Dist.*, 127 Ohio St.3d 63, 2010-Ohio-4907, 936 N.E.2d 489, is unavailing. In that case, the majority concluded that the record contained no support for finding the sale voluntary, rendering the BTA's finding unreasonable and unlawful. *Id.* at ¶ 24. *Accord HealthSouth Corp.*, ¶ 14 (BTA findings to be reversed "only when there is a total absence of evidence to support a particular finding"). In this case, it is clear that there is evidence to support the BTA's decision; we therefore cannot conclude that the BTA acted unreasonably or unlawfully in upholding the use of the sale price under these circumstances. *See Strongsville*, 112 Ohio St.3d 309, 2007-Ohio-6, 859 N.E.2d 540, ¶ 15.

**{¶ 35}** Moreover, the school board did not present an affirmative case to reverse the BOR's determination at the BTA. Instead, the school board advocated for a presumption that it continues to advance here. According to the school board, just as the basic documentation of a sale usually raises a presumption at both the BOR and the BTA that the sale is one that is recent and at arm's length, the fact that the sale price is less than the amount owed in connection with the mortgage should raise a contrary presumption that the sale does not reflect market value. We disagree. The significance of the relationship between sale price and the amount owed pertains primarily to the voluntary character of the sale. Although the proponent of a short sale does bear an initial burden to offer evidence that the sale is voluntary, that burden may be satisfied when the proponent presents specific testimony supporting the conclusion that the lender acted as a typically motivated seller. Another mode of proof, as the school board points out, would be to show that the property was actively and openly marketed for sale for a reasonable period of time. *See Brashnyk v. Lane Cty. Assessor*, Or.Tax Ct.-Mag.Div. No. TC-MD 110308, 2011 WL 6182028 (Dec. 12, 2011) (bank-owned property's extensive exposure to the market demonstrated that the transaction reflected market value).

**{¶ 36}** For all the foregoing reasons, we conclude that the BTA did not act unreasonably or unlawfully in using the August 2007 sale price as the value of the property for tax year 2007.

### Conclusion

**{¶ 37}** The BTA acted reasonably and lawfully when it permitted the filing of the complaint by Kurt Novak that challenged the valuation of Susanne Novak's property. Given the record before it, the BTA was justified in finding that the bank acted as a typically motivated seller. We affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

O'DONNELL, J., concurs in judgment only.

_____

Rich & Gillis Law Group, L.L.C., Mark H. Gillis, and Karol C. Fox, for appellant.

_____