[Cite as *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 2016-Ohio-4554.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Board of Education of the Columbus City Schools et al., | : | |
| | : | |
| Appellants-Appellees, | : | |
| [First Impressions Collision, Inc., | : | |
| Appellants-Appellants], | : | |
| | : | No. 15AP-549 |
| v. | | (BTA No. 2014-2686) |
| | : | |
| Franklin County Board of Revision et al., | : | (REGULAR CALENDAR) |
| | : | |
| Appellees-Appellees. | : | |

D E C I S I O N

Rendered on June 23, 2016

**On brief:** *Strip Hoppers Leithart McGrath & Terlecky Co. LLP,* and *Kenneth R. Goldberg,* for appellants First Impressions Collision, Inc. **Argued:** *Kenneth R. Goldberg.*

**On brief:** *Rich & Gillis Law Group, LLC, Mark H. Gillis,* and *Kimberly G. Allison,* for appellees Board of Education of the Columbus City Schools. **Argued:** *Kimberly G. Allison.*

APPEAL from the Board of Tax Appeals

HORTON, J.

{¶ 1} Appellant, First Impressions Collision, Inc. ("First Impressions"), appeals from a decision and order of the Ohio Board of Tax Appeals ("BTA"), determining the taxable value of certain real property for the tax years 2012 and 2013. Since we conclude that the BTA's decision was not unreasonable or unlawful, we affirm its order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2}  The following background facts are generally undisputed.  Since 2005, First Impressions has operated an automobile collision repair business at the subject property, which is 1.534 acres with a 15,000 square-foot building located in the Columbus City School's taxing district. First Impressions originally leased the building next to the subject property for five years. Then in 2005, First Impressions started leasing the subject property from Frazier Development, Inc. ("Frazier").

{¶ 3}  In 2012, Frazier informed First Impressions' owner, Phil Davidson,[1] that it intended to sell the property.  Davidson testified that Frazier asked Davidson to come to a meeting between Frazier and his bank regarding the future of the property. At the meeting, Frazier and the banker negotiated the terms of the sale.  (Tr. at 13.)  When they finished, they told Davidson the terms of the sale, including the sales price and the deposit amount, $50,000.  The sales price for the property, was $1,325,000. Davidson agreed to purchase the property at that price.  Frazier deposited $50,000 in an account owned by First Impressions.  (Tr. at 15.)  Davidson did not participate in the negotiations.  (Tr. at 16.)  Frazier transferred the property to First Impressions in March 2012 for $1,325,000, with $260,000 deducted for personal property.

{¶ 4}  The Franklin County Auditor originally assessed the value of the property at $550,000.  The board of education of the Columbus City Schools, appellee ("board of education"), filed a complaint with the Franklin County Board of Revision ("BOR") seeking to increase the Franklin County Auditor's 2012 and 2013 valuations for the property from $550,000 to the sales price of $1,065,000 ($1,325,000 - $260,000 = $1,065,000).

{¶ 5}  On April 29, 2014, the BOR held a hearing regarding the valuation of the property.  At the hearing, Davidson testified regarding the circumstances surrounding the sale of the property.  He stated that his business operates primarily with 14 insurance companies and his collision repair shop is the only preferred shop in that zip code.  The insurance contracts are location specific.  Moving the business could affect his preferred status with the insurance companies based upon the competition within the new area.  He

---

[1] Davidson is the owner of FIC and the sole shareholder of FIC Enterprises, Ltd., the company that now holds the property deed.

stated the biggest value in the company is its location and the relationships he has cultivated with the insurance companies based upon that location. (Tr. at 19.) He testified the effects of moving to a different location "could be catastrophic" to his business. (Tr. at 35.) He believes he would have lost his business if he had not purchased the building. (Tr. at 37.)

{¶ 6} Davidson further testified that the property was never listed for sale and no real estate broker or agent was involved. (Tr. at 13.) Davidson did know that other offers for the purchase of the property existed, but he did not know the offering prices. (Tr. at 27-28.) He did not explore any options to move, whether to lease or purchase, because he believed purchasing this property was the only way to "keep [his] company." (Tr. at 17, 35; 37.)

{¶ 7} On June 4, 2014, the BOR issued a decision in which it valued the property at $550,000. The BOR found that the sale of the property was not an arm's-length transaction and if First Impressions did not purchase the property, but had moved out of the subject property, it would have had a negative effect on his business and possibly closed the business.

{¶ 8} The board of education appealed and, on May 4, 2015, the BTA determined the April 2012 sale of the property was both recent and an arm's-length transaction and therefore, the property's value was $1,065,000 for tax years 2012 and 2013.

## II. ASSIGNMENT OF ERROR

{¶ 9} First Impressions appeals the order of the BTA, asserting the following assignment of error:

> The Decision of the Board of Tax Appeals that the Sale of the Property was an Arm's Length Transaction was Unreasonable and Unlawful.

## III. STANDARD OF REVIEW

{¶ 10} In reviewing a BTA decision, an appellate court determines whether that decision was "reasonable and lawful." *Columbus City School Dist. Bd. of Edn. v. Zaino*, 90 Ohio St.3d 496, 497 (2001); *see* R.C. 5717.04. The appellate court will reverse a BTA decision based on an incorrect legal conclusion. *Bd. of Edn. of Gahanna-Jefferson Local School Dist. v. Zaino*, 93 Ohio St.3d 231, 232 (2001). However, "[t]he BTA is responsible

for determining factual issues and, if the record contains reliable and probative support for these BTA determinations" the court will affirm those determinations. *Am. Natl. Can Co. v. Tracy*, 72 Ohio St.3d 150, 152 (1995). The " 'fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities' " and an appellate court will not disturb a decision of the BTA " 'unless it affirmatively appears from the record that such decision is unreasonable or unlawful.' " *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 1, 2014-Ohio-853, ¶ 48, quoting *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, ¶ 17, quoting *Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52 (1968), syllabus.

{¶ 11} The taxpayer has the burden to prove entitlement to a reduction in value when challenging the auditor's valuation of property before the BOR. *Piepho v. Franklin County Bd. of Revision*, 10th Dist. No. 13AP-818, 2014-Ohio-2908, ¶ 6. When a party challenges the BOR's decision in an appeal to the BTA, that party has the burden of proof to establish its proposed value. *Id.*

## IV. DISCUSSION

{¶ 12} First Impressions argues in its assignment of error that the BTA erred when it valued the property at $1,065,000 and found the purchase of the property was pursuant to an arm's-length transaction. First Impressions argues that the sale did not constitute an arm's-length transaction.

{¶ 13} The best evidence of the true value of real property is an actual, recent sale of the property in an arm's-length transaction. *Lakeside Ave. Ltd. Partnership v. Cuyahoga Cty. Bd. of Revision*, 75 Ohio St.3d 540 (1996). R.C. 5713.03 requires the county auditor to determine, as nearly as practicable, the true value of each separate tract, lot or parcel of real estate and of buildings, structure and improvements located on the property from the best sources of information possible. Former R.C. 5713.03, which was in effect for the tax year beginning 2012, provided in pertinent part:

> In determining the true value of any tract, lot, or parcel of real estate under this section, if such tract, lot, or parcel has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date, the auditor shall consider the

sale price of such tract, lot, or parcel to be the true value for taxation purposes.[2]

{¶ 14} An arm's-length transaction has three characteristics: "[I]t is voluntary, i.e., without compulsion or duress; it generally takes place in an open market; and the parties act in their own self-interest." *Walters v. Knox Cty. Bd. of Revision*, 47 Ohio St.3d 23 (1989), syllabus. A buyer or seller is not considered willing if compelled to buy or sell for economic reasons. *Columbus Bd. of Edn. v. Franklin County Bd. of Revision*, 10th Dist. No. 90AP-317 (Jan. 28, 1992). Although the presumption exists that the sale price is the best evidence of true value, one may rebut that presumption when the sale was not an arm's-length transaction. *Lakeside* at 540.

{¶ 15} First Impressions contends that the sale between Frazier and First Impressions was not an arm's-length transaction because First Impressions did not have the opportunity to negotiate the selling price or seek representation to assist in the negotiations. First Impressions cites the Supreme Court of Ohio case, *Lakeside*, as support for its contention. In *Lakeside*, Triton Transport Services, Inc. ("Triton") leased the subject property. Subsequently, the property owner informed Triton it intended to develop the property and terminate Triton's lease or Triton could purchase the property for the non-negotiable price of $1.2 million. Triton determined it must purchase the property even though it considered the selling price exorbitant because it would have had to file for bankruptcy otherwise.

{¶ 16} The court held that a sale is not an arm's-length transaction when "compelling business circumstances of the type at issue in this case" negate the arms-length nature and the sales price as the true value. *Id.* at 548. The court found several factors indicated that the sale was not an arm's-length transaction, including that the sales price was non-negotiable and highly inflated. Since the purchase price was so inflated, two lenders refused to finance the sale. Further factors included that the property was not offered for sale on the open market, Triton felt compelled to purchase the property or lose a "significant portion" of its business and result in bankruptcy, and there was testimony that there was no option to relocate.

---

[2] R.C. 5713.03 was amended effective March 27, 2013, but the legislature did not amend this language.

{¶ 17} The Supreme Court of Ohio distinguished *Lakeside* in *Bd. of Edn. of the Cleveland Mun. School Dist. v. Cuyahoga County Bd. of Revision*, 107 Ohio St.3d 250, 2005-Ohio-6434. In *Bd. of Edn.*, the purchaser argued that he made the purchase under economic coercion because the property owner threatened to increase the rent, and if it relocated, much of the restaurant equipment would have to remain. The purchaser had spent $725,000 to finish the space and equip the restaurant and could take no more than $50,000 to $60,000 of the improvements if relocated. In that case, the court found that the facts did not demonstrate the economic compulsion as found in *Lakeside*. The purchaser negotiated the sales price, there was no evidence that any bank had refused to finance the purchase or that the financing was unusual, there was no evidence that the purchasers had investigated the option to relocate, and there was no evidence that relocating would cause the owners to file bankruptcy.

{¶ 18} The "ultimate character of a sale as voluntary or involuntary is a factual matter to be resolved by the finder of fact based on the entire record before it." *Columbus City School Dist. Bd. of Edn. v. Franklin County Bd. of Revision*, 134 Ohio St.3d 529, 2012-Ohio-5680, ¶ 31. In that case, the Supreme Court of Ohio stated that the standard for duress "is whether compelling circumstances lead to the parties consummating a transaction whose terms would likely be unacceptable to a typically motivated seller or buyer." *Id.*, citing *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 112 Ohio St.3d 309, 2007-Ohio-6. Further, a finding of duress is a matter within the province of the fact-finder, and the appellate court will not reverse the determination as long as the record supports it. *Id.*

{¶ 19} In this case, there was no evidence that the purchase price was inflated or that lenders refused to finance the sale. On the contrary, an appraisal report supported the purchase price ($1,185,000). (Appellant's Ex. A.) Davidson testified that he did not investigate any options to relocate and he stated that there was a possibility of increased competition or the loss of some insurance contracts, but no evidence that First Impressions would declare bankruptcy if relocated.

{¶ 20} First Impressions also contends that the sale was not an arm's-length transaction because the property owner did not list the property for sale. However, Davidson testified that the property owner had received offers from other collision repair

shops to purchase the property.  The Supreme Court of Ohio has held that the fact of whether the property owner listed the property for sale does not determine whether a sale was an arm's-length transaction because "an arms-length transaction is one that '*generally* takes place in an open market.' " (Emphasis sic.)  *N. Royalton City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 129 Ohio St.3d 172, 2011-Ohio-3092, ¶ 29, quoting *Strongsville Bd. of Edn.*, quoting *Walters.*  Arm's-length transactions have been applied to " 'private sales,' i.e., sales that do not bear the indicia of open-market transactions." *N. Royalton* at ¶ 30. The absence of open-market elements does not necessarily negate the arm's-length character of a transaction.  *Id.*

{¶ 21} For the foregoing reasons, we conclude that the BTA did not act unreasonably or unlawfully in using the 2012 sales price as the value of the property for tax years 2012 and 2013.  First Impressions' assignment of error is overruled.

## V. CONCLUSION

{¶ 22}  The BTA acted reasonably and lawfully when it determined the sale of the property was an arm's-length transaction.  The order of the BTA determining the taxable value of the property for the tax years 2012 and 2013 is affirmed.

*Order affirmed.*

BROWN and SADLER, JJ., concur.

————————————————